890 F.2d 65
 57 Ed. Law Rep. 368
 Kalima JENKINS, by her friend, Kamau AGYEI; Carolyn Dawson,
by her next friend, Richard Dawson, Tufanza A. Byrd, by her
next friend, Teresa Byrd; Derek A Dydell, by his next
friend, Maurice Dydell; Terrance Cason, by his next friend,
Antoria Cason; Jonathan Wiggins, by his next friend,
Rosemary Jacobs Love; Kirk Allan Ward, by his next friend,
Mary Ward; Robert M. Hall, by his next friend, Denise Hall;
Dwayne A. Turrentine, by his next friend, Shelia
Turrentine; Gregory A. Pugh, by his next friend, David
Winters, on behalf of themselves and all others similarly
situated, Appellees,
and
American Federation of Teachers, Local 691,
v.
The STATE OF MISSOURI; Honorable John Ashcroft, Governor of
the State of Missouri; Wendell Bailey, Treasurer of the
State of Missouri; Missouri State Board of Education
Roseann Bentley, Dan Blackwell, Terry A. Bond, President,
Delmar A. Cobble, Grover Gamm, Jimmy Robertson, Robert L.
Welling, Donald E. West, Member of the Missouri State Board
of Education Arthur L. Mallory, Commissioner of Education of
the State of Missouri, Appellants,
and
School District of Kansas City, Missouri and Claude C.
Perkins, Superintendent thereof, Appellees,
Icelean Clark; Bobby Anderton; Eleanor Graham; John C.
Howard; Craig Martin; Gay D. Williams; Kansas City Mantel
& Tile Co.; Coulas & Griffin Insurance Agency, Inc.;
Sharon Dunham; Lindsay K. Kirk; Linda Frazier; Rick
Feierabend; Linda Hollenbeck; James Hollenbeck; Susan
Horseman; and Clifford M. Horseman, Jackson County, Missouri.
 Nos. 88-2502, 88-2837.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 8, 1989.
Decided Nov. 20, 1989.
On application for Attorneys' Fees, Expenses and Costs Jan.
10, 1990.
 
 Michael J. Fields, Asst. Atty. Gen., Jefferson City, Mo., for appellants.
 Allen R. Snyder, Washington, D.C. and Arthur A. Benson, Kansas City, Mo., for appellees.
 Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 The State of Missouri appeals from four orders entered by the district court in the ongoing litigation surrounding the desegregation of the Kansas City, Missouri, School District ("KCMSD"). The State argues that the district court[1] erroneously: (1) delegated powers to the Desegregation Monitoring Committee; (2) denied the State's motion for declaratory relief and sanctions against the KCMSD; (3) approved certain portions of the desegregation budget; and (4) required the State to pay the full cost of providing transportation to and from magnet schools for the 1986-87 school year. We affirm all of the orders.
 
 I.
 
 2
 The district court established the Desegregation Monitoring Committee to oversee implementation of the court's orders by conducting evaluations, collecting information, and recommending modifications in the orders. Jenkins v. Missouri, 639 F.Supp. 19, 42 (W.D.Mo.1985), aff'd as modified, 807 F.2d 657 (8th Cir.1986), cert. denied, 484 U.S. 816, 108 S.Ct. 70, 98 L.Ed.2d 34 (1987). "In its letter dated March 24, 1988, the [district court] directed the parties to submit any disputes involving interpretation of the [c]ourt's desegregation orders to the Desegregation Monitoring Committee for initial resolution." May 11, 1988, Order at 1. The court adopted this procedure "because it provides a practical method of carrying out the [c]ourt's remedial orders on a day-to-day basis without unnecessary court involvement." Id. In granting the power to the Monitoring Committee, the court relied upon its "inherent power to supply itself with assistance for carrying out duties necessary to the administration of justice." Id. at 2 (citing Schwimmer v. United States, 232 F.2d 855, 865 (8th Cir.), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956)). Any party may ask the district court to review a Monitoring Committee decision on a de novo basis.[2] The court will comply with all timely requests for review; if no appeal is made to the district court within fifteen days after the Monitoring Committee makes a decision, the parties are bound by it.[3] August 29, 1988, Order at 1-2.
 
 
 3
 Both in the district court and on appeal, the State has argued that essential attributes of judicial power have been improperly delegated to the Monitoring Committee in violation of Article III of the United States Constitution, as interpreted by the Supreme Court in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).[4] In its May 11, 1988, Order, the district court rejected the State's argument, and we are similarly unpersuaded. A district court's order authorizing the initial determination of issues by an appointed referee or master does not contravene Article III if the ruling is susceptible to de novo review by the district court. See United States v. Raddatz, 447 U.S. at 681-84, 100 S.Ct. at 2415-16.
 
 
 4
 The Monitoring Committee's determinations will not be subject to de novo review by the district court if the parties fail to appeal the orders to that court within fifteen days. However, this procedural rule does not violate Article III. See Thomas v. Arn, 474 U.S. 140, 154, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985) (upholding, against an Article III challenge, a rule which permitted "both the district judge and the court of appeals to refuse to review a magistrate's report absent timely objection"); cf. United States v. Peacock, 761 F.2d 1313, 1318 (9th Cir.) (Kennedy, J.) ("Where de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties"), cert. denied, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985).
 
 
 5
 The State also challenges the district court's power to create the Monitoring Committee. Relying primarily upon La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), the State argues that the district court did not comply with Federal Rule of Civil Procedure 53, which governs the use of special masters. The district court did not rely upon Rule 53 when it created the Monitoring Committee, and we need not decide whether its actions are consistent with that Rule. As Judge Rubin has stated:
 
 
 6
 [R]ule 53 does not terminate or modify the district court's inherent equitable power to appoint a person, whatever be his title, to assist it in administering a remedy. The power of a federal court to appoint an agent to supervise the implementation of its decrees has long been established. Such court-appointed agents have been identified by "a confusing plethora of titles: 'receiver,' 'Master,' 'Special Master,' 'master hearing officer,' 'monitor,' 'human rights committee,' 'Ombudsman,' " and others. The function is clear, whatever the title.
 
 
 7
 Ruiz v. Estelle, 679 F.2d 1115, 1161 (5th Cir.) (footnotes omitted) (quoting Special Project, The Remedial Process in Institutional Reform Litigation, 78 Colum.L.Rev. 784, 826 (1978)), amended in part and vacated in part on other grounds, 688 F.2d 266 (5th Cir.1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). See also Swann v. Board of Educ., 402 U.S. 1, 15, 91 S.Ct. 1267, 1275-76, 28 L.Ed.2d 554 (1971) (stressing a district court's broad "equitable powers" to remedy the effects of segregation); Schwimmer v. United States, 232 F.2d at 865 (holding that a district court has equitable powers which go "[b]eyond the provisions of Rule 53"). The district court's use of the Monitoring Committee is well within the court's equitable powers.
 
 II.
 
 8
 The KCMSD withdrew $1,255,956 from the State's desegregation program account to pay for the cost of providing transportation to and from magnet schools during the 1986-87 school year. The State asked the district court to impose sanctions upon the KCMSD because, according to the State, the withdrawal had not been authorized by the district court. The district court rejected the State's argument and denied the motion for sanctions, because it concluded that its order of June 16, 1986, clearly provided that the State would pay the full cost of the transportation in question. August 29, 1988, Order at 7-8. The court further observed that, before withdrawing the money from the State's program account, the KCMSD sought an interpretation from the Monitoring Committee, which stated that the full cost of the transportation program should be paid by the State. Id. at 8.
 
 
 9
 The State now recognizes that the withdrawals were authorized by the district court order, but nevertheless claims that sanctions should be imposed because the KCMSD could not have known when it withdrew the money that its actions were authorized by the district court. In essence, the State asks that we reverse the district court's denial of sanctions in spite of the fact that the KCMSD obtained a favorable ruling from the Monitoring Committee, and in spite of the district court's conclusion that the KCMSD acted properly. We decline its invitation. Moreover, the State's use of the terms "theft" and "pilferage" to describe the KCMSD's action exceeds the bounds of acceptable advocacy.
 
 III.
 
 10
 The State argues that the district court's decision to use maximum, rather than average, class sizes to determine how many teachers must be employed by the KCMSD is erroneous because this court approved the use of average class size in similar computations in the St. Louis desegregation case. See Liddell v. Board of Educ., 830 F.2d 823, 826-27 (8th Cir.1987); Liddell v. Board of Educ., 823 F.2d 1252, 1254 (8th Cir.1987).
 
 
 11
 The state's argument is unavailing for two reasons. First, the district court in this case has consistently used maximum class size measurements as a means of calculating teacher requirements, see Jenkins, 639 F.Supp. at 30, and it has become the law of the case, see Liddell v. Missouri, 731 F.2d 1294, 1304-05 (8th Cir.) (en banc), cert. denied, 469 U.S. 816, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984). Second, the question in the Liddell case was not whether courts must always use average class size figures when computing the number of teachers which a school must employ. Rather, we simply held in Liddell that, on the facts of that case, it was appropriate to use a formula based upon average class size. See 731 F.2d at 1313-17. Similarly, the district court in this case has not exceeded its broad discretion to shape remedial measures. See United States v. Paradise, 480 U.S. 149, 184, 107 S.Ct. 1053, 1073, 94 L.Ed.2d 203 (1987) ("[T]he choice of remedies to redress racial discrimination is 'a balancing process left, within appropriate constitutional or statutory limits, to the sound discretion of the trial court' ") (quoting Fullilove v. Klutznick, 448 U.S. 448, 508, 100 S.Ct. 2758, 2790, 65 L.Ed.2d 902 (1980) (Powell, J., concurring)).
 
 IV.
 
 12
 The State also claims that the district court erroneously: (1) refused to adjust the State's funding obligation to reflect an alleged error which had been made in calculating the base number of teachers required in 1987-88; (2) approved a purportedly excessive number of teachers for the 1988-89 school year; (3) and required the state to pay certain percentages of the cost of magnet school transportation. These arguments do not merit detailed discussion. The district court's orders reflect a careful analysis of the issues presented and a conscientious and thorough effort to remedy constitutional violations.
 
 V.
 
 13
 We acknowledge that different remedies have been fashioned in the Kansas City desegregation effort than in the comparable St. Louis case. However, the remedies approved in either case do not necessarily restrict the options of the district court in the other. As the Supreme Court has stated, "There is no universal answer to complex problems of desegregation; there is obviously no one plan that will do the job in every case. The matter must be assessed in light of the circumstances present and the options available in each instance." Green v. County School Bd., 391 U.S. 430, 439, 88 S.Ct. 1689, 1695, 20 L.Ed.2d 716 (1968).
 
 
 14
 Finally, we observe that the State's briefs contain excessive language as well as a repetition of issues which have already been decided.
 
 
 15
 Accordingly, we affirm in all respects the orders which the district court issued on May 11, 1988; July 25, 1988; August 29, 1988; and November 28, 1988.[5]
 
 ORDER
 
 16
 Applications for attorneys' fees, expenses and costs filed by counsel for the Jenkins Class and counsel for Kansas City, Missouri School District are before the court. The State has responded to both applications.
 
 
 17
 Having carefully considered the application of the Jenkins Class, and the objections filed by the State, we conclude that attorneys' fees should be awarded in the amount of $14,793.50. We have concluded that the time devoted to the case was reasonable, and that the hourly rates requested were reasonable. Expenses of the Jenkins Class in the amount of $723.33 are awarded.
 
 
 18
 With respect to the motion of KCMSD, and having considered the response of the State, we award fees in the following amounts:
 
 
 19
 Lawyer time $45,000.00
Non-lawyer services $3,625.00
Expenses $2,317.27
 
 
 20
 While we reduced the requested fee of KCMSD in our order of March 2, 1989 by 25 percent because of apportionment of the liability to KCMSD, the issues involved in this appeal do not render such a reduction equitable, in our judgment. We make some reduction in the fee requested because of the likelihood of duplication of effort considering the five attorneys that worked on the brief. We are aware of the nature of the issues raised, that one issue that was briefed would have been before argument.
 
 
 21
 The Clerk is directed to enter costs in favor of KCMSD in the amount of $218.30. With respect to the time of the non-lawyer librarian, we made reference to time of such personnel in our oder of March 2, 1989. The services rendered by such personnel are essentially similar to those rendered by paralegals.
 
 
 
 [1]
 The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri
 
 
 [2]
 The State argues that the Order does not indicate what standard of review will be utilized by the district court. Jenkins and the KCMSD both state that the district court will employ a de novo standard when reviewing the Monitoring Committee's recommendations. We are satisfied that the district court will review an interpretation of one of its earlier orders on a de novo basis. We add that this construction of the Order helps to ensure the constitutionality of the court's actions. See United States v. Raddatz, 447 U.S. 667, 681-84, 100 S.Ct. 2406, 2415-17, 65 L.Ed.2d 424 (1980) (holding that the use of a magistrate to initially resolve a motion to suppress evidence did not violate Article III as long as the district court reviewed the determination on a de novo basis)
 
 
 [3]
 A Monitoring Committee interpretation is stayed on the date an appeal with supporting suggestions is filed with the district court. August 29, 1988, Order at 2. The State suggests that to protect itself it must bring a computer and photocopy machine to each meeting of the Monitoring Committee, prepare its motion and suggestions, and file them as soon as the district court opens the following morning. This frivolous argument does not persuade us that the district court will do other than properly exercise its discretion in considering requested stays
 
 
 [4]
 In Northern Pipeline, just as in the later cases of Granfinanciera, S.A. v. Nordberg, --- U.S. ----, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); Commodity Futures Trading Commission v. Schor, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); and Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985), the Supreme Court reviewed congressional attempts to establish adjudicatory bodies other than Article III courts. The congressional action in those cases raised separation of powers issues which are not raised by the district court's use of the Monitoring Committee. See Granfinanciera, 109 S.Ct. at 2802-05 (Scalia, J., concurring); Schor, 478 U.S. at 848-57, 106 S.Ct. at 3255-60; Thomas, 473 U.S. at 582-94, 105 S.Ct. at 3333-40; Northern Pipeline, 458 U.S. at 57-87, 102 S.Ct. at 2864-80
 
 
 [5]
 While this appeal was pending, the State filed a supplemental brief which essentially challenges arguments made by the KCMSD in the district court. We decline to review these matters not yet decided by the district court. Although the State describes the KCMSD's arguments in the district court as "admissions" which are relevant to the issues properly before us on appeal, we find this interpretation to be, at best, unpersuasive. Our refusal to grant the State any relief at this time is without prejudice to its right to appropriately appeal from any district court order