967 F.2d 1248
 76 Ed. Law Rep. 42
 Kalima JENKINS, by her next friend, Kamau AGYEI; Carolyn
Dawson, by her next friend Richard Dawson; Tufanza A. Byrd,
by her next friend Teresa Byrd; Derek A. Dydell, by his
next friend Maurice Dydell; Terrance Cason, by his next
friend Antoria Cason; Jonathan Wiggins, by his next friend
Rosemary Jacobs Love; Kirk Allan Ward, by his next friend
Mary Ward; Robert M. Hall, by his next friend Denise Hall;
Dwayne A. Turrentine, by his next friend Shelia Turrentine;
Gregory A. Pugh, by his next friend, David Winters; on
behalf of themselves and all others similarly situated;
Plaintiffs-Appellees,
School District of Kansas City, Missouri; Claude C.
Perkins, Superintendent thereof; Plaintiffs,
American Federation of Teachers, Local 691, Intervenor below,
v.
STATE OF MISSOURI; Honorable John Ashcroft, Governor of the
State of Missouri; Wendell Bailey, Treasurer of the State
of Missouri; Missouri State Board of Education; Roseann
Bentley, Member of the Missouri State Board of Education;
Dan L. Blackwell, Member of the Missouri State Board of
Education; Raymond McCallister, Jr., Member of the Missouri
State Board of Education; Susan D. Finke, Member of the
Missouri State Board of Education; Thomas R. Davis,
presiding, Member of the Missouri State Board of Education;
Cynthia B. Thompson, Member of the Missouri State Board of
Education; Gary D. Cunningham, Member of the Missouri State
Board of Education; Rebecca M. Cook, Member of the Missouri
State Board of Education; Robert E. Bartman, Commissioner
of Education of the State of Missouri, Defendants-Appellants.
 No. 90-2895.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 25, 1991.
Decided June 30, 1992.
 
 Bart A. Matanic, Jefferson City, Mo., argued (Michael J. Fields, on the brief), for appellant.
 Arthur A. Benson, II, Kansas City, Mo., argued (Dianne E. Moritz, on the brief), for appellee.
 Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 The State of Missouri appeals from a district court order in the Kansas City school desegregation case granting the plaintiff class attorneys' fees against the State for defending the remedial plan in this case from attacks by intervenors in the Jenkins suit and by plaintiffs in a collateral suit. Order of October 10, 1990, slip op. at 3-4. The State relies on inferences from Independent Federation of Flight Attendants v. Zipes, 491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989), in arguing that it cannot be liable for attorneys' fees the plaintiff incurred in litigation against other parties. The plaintiffs contend that Zipes does not govern this case, and that defending the chosen remedy in a desegregation case is an integral part of the plaintiffs' role in the private enforcement of civil rights laws. We conclude that the State can be required to pay fees attributable to litigation in the Jenkins suit against intervenors, but not to litigation in a collateral lawsuit. We affirm in part and reverse in part.
 
 
 2
 When the plaintiff class moved for the award of attorneys' fees for year V of the remedial plan, it included $9,280.25 for fees incurred in connection with three different attacks on the remedial plans adopted in this case. The first attack was launched by the Ronika Newton group, members of the Jenkins class, who moved in the main action to modify the racial admission requirements for the magnet schools. The district court denied the Newton group's motion and disqualified its counsel, and we affirmed. Jenkins v. Missouri, 931 F.2d 470, 483-86 (8th Cir.) (Jenkins IV ), cert. denied, --- U.S. ----, 112 S.Ct. 437, 116 L.Ed.2d 456 (1991). Thereafter, the Newton group's cause was shouldered by the Mark Anthony Nevels group, which unsuccessfully moved to modify the magnet plan. See Order of July 3, 1990, slip op. at 1.
 
 
 3
 The remedy was also challenged by Quinton Rivarde et alia, also members of the Jenkins class, who filed a separate suit against the Kansas City, Missouri School District and the State, alleging that the remedy in the main action had been ineffective and demanding that the State pay minority students' tuition at private schools as an alternative remedy. The State moved to dismiss the Rivarde suit, and the Jenkins plaintiffs sought to intervene to protect the magnet plan from the threat posed by the competing plan urged by the Rivarde plaintiffs. The district court dismissed Rivarde on the grounds that the Rivarde group was seeking modification of the Jenkins remedy and could not pursue its interests in a separate lawsuit from the Jenkins case. We affirmed. Rivarde v. Missouri, 930 F.2d 641 (8th Cir.1991).
 
 
 4
 Finally, the plaintiffs defended against a group that intervened in the main action to prevent the Paseo High School from being torn down, as called for in the capital improvement plan, adopted as part of the desegregation remedy. The district court denied the Paseo intervenors' motion to adopt a "Revitalization Plan" for the Paseo High building. Order of October 10, 1990, slip op. at 1 ("Paseo Order").
 
 
 5
 The district court found that the attorney time the plaintiffs claimed in connection with these three attacks was "reasonably expended," Order of October 10, 1990, slip op. at 4, and awarded the fees. Id.
 
 I.
 
 6
 The State first objects to the award of fees plaintiffs incurred in litigating against intervenors in the main action, relying on Zipes, 491 U.S. 754, 109 S.Ct. 2732. In Zipes, a sizable Title VII action, the intervenor unsuccessfully challenged the remedy the plaintiffs and defendant had adopted in their settlement agreement. The plaintiffs then petitioned for an award of attorneys' fees against the intervenor. 491 U.S. at 757-58, 109 S.Ct. at 2734-35. The Supreme Court, balancing the equities among the various parties to a Title VII suit,[1] held that courts should only award attorneys' fees against a losing intervenor if "the intervenors' action was frivolous, unreasonable, or without foundation." Id. at 761, 109 S.Ct. at 2736.
 
 
 7
 Since Zipes considered the liability of a losing intervenor, not that of a defendant, its holding obviously does not decide the issue in this case.[2] However, the Zipes Court's balancing of the equities involved in Title VII litigation guides us in determining who should bear liability for the fees in this desegregation litigation. In deciding not to award fees against the intervenor, Zipes relied heavily on two equitable considerations: (1) that the Title VII suit would result in a great enough fee award so that awarding fees to the Title VII plaintiffs against the intervenor was "not essential" to "vindicate the national policy against wrongful discrimination," 491 U.S. at 761, 109 S.Ct. at 2736; and (2) that the "losing intervenors ... have not been found to have violated anyone's civil rights." 491 U.S. at 762, 109 S.Ct. at 2737.
 
 
 8
 Both these factors cut in the opposite direction in this case. First, given the special nature of desegregation cases, withholding from the plaintiffs the means for paying their attorneys could be devastating to the national policy of enforcing civil rights laws through the use of private attorneys general. School desegregation cases can continue for years and affect nearly everyone in the community in one way or another. Various interventions and collateral attacks are not only predictable, but inevitable in litigation affecting so many people in so many different capacities. Furthermore, a school desegregation case differs from much other litigation in that the main action does not result in a monetary recovery that might enable plaintiffs to finance a defense against collateral attacks on their judgments. The only monetary award received by the plaintiffs in a desegregation case is simply payment of their attorneys' fees, and it is inequitable to require the attorney for the class to defend against collateral attacks on the award. Such service is just as much a part of the representation of the plaintiff class as obtaining relief in the first instance. To deny plaintiffs fees in a desegregation case would be to deny them the means to respond to attacks on the remedy. Monitoring implementation of the remedy is a crucial part of the plaintiffs' function in these cases: "Services devoted to reasonable monitoring of the court's decrees, both to insure full compliance and to ensure that the plan is indeed working to desegregate the school system, are compensable services. They are essential to the long-term success of the plaintiff's suit." Northcross v. Board of Educ., 611 F.2d 624, 637 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).
 
 
 9
 Second, the State, unlike the intervenor in Zipes, is a constitutional violator, and not entitled to the solicitude Zipes showed the "blameless" intervenor. See 491 U.S. at 761, 109 S.Ct. at 2736.
 
 
 10
 The State argues that dictum from Zipes indicates the Supreme Court contemplated that plaintiffs might be required to litigate against intervenors without compensation.[3] Zipes stated that the "defendant will ... be liable for all of the fees expended by the plaintiff in litigating the claim against him" (emphasis added), and the State considers this implicitly to preclude a defendant from being liable for fees incurred in litigating against intervenors. This language is not a holding and is only relevant by inference, rather than by overt meaning. We think this dictum must be read in conjunction with the equitable balancing we have already discussed, and therefore we conclude that Zipes does not require a result contrary to that reached by the district court regarding the intervenors.
 
 II.
 
 11
 Second, the State raises the related question of whether the district court could award plaintiffs their fees for intervening in the separate Rivarde case.
 
 
 12
 We believe that this question must be decided on the basis of Zipes. Part of the Zipes majority's reasoning was that plaintiffs should not be awarded fees against intervenors, since they would not be entitled to fees had the intervenors chosen to bring suit in a collateral attack. 491 U.S. at 762, 109 S.Ct. at 2737. Rivarde was, of course, a collateral attack, and therefore Zipes would seem to forbid an award of fees in Jenkins for services rendered in Rivarde.
 
 
 13
 Further, in Rivarde the thrust of the litigation was inadequacy of the remedy and the proposal of an alternative remedy in addition to that in Jenkins. In issues as close as those before us, this also militates against awarding fees incurred in Rivarde.
 
 III.
 
 14
 Accordingly, we affirm the order of the district court with respect to the Newton-Nevels and Paseo High School litigation, but reverse with respect to the fee awarded for services rendered by counsel for the Jenkins class in Rivarde.
 
 
 
 [1]
 The Supreme Court noted that the language of § 706(k) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k) (1988), which it interpreted in Zipes, is "substantially the same" as 42 U.S.C. § 1988 (1988), which forms the basis for the award in this case. 491 U.S. at 758 n. 2, 109 S.Ct. at 2735 n. 2. Therefore, we consider Zipes authoritative in a section 1988 case
 
 
 [2]
 Two district courts have reached opposite results on the question of whether Zipes permits an award of attorneys' fees against a defendant for fees incurred litigating against intervenors. Compare United States v. City and County of San Francisco, 748 F.Supp. 1416, 1437 (N.D.Cal.1990), and Nash v. City of Tyler, 736 F.Supp. 733, 734 (E.D.Tex.1989). In Bigby v. City of Chicago, 927 F.2d 1426 (7th Cir.1991), the Seventh Circuit denied such fees because the defendant had opposed the intervenors' position and because the order the plaintiffs were defending "was not entered to remedy race discrimination," but was an ancillary matter. Id. at 1429. In this case, the plaintiffs incurred their fees in defending the remedy, which was crucial to their object in filing suit to begin with. Thus, our case is distinguishable from Bigby
 
 
 [3]
 The State also cites passages in the Zipes concurrence, 491 U.S. at 767, 109 S.Ct. at 2739-40 (Blackmun, J., concurring), and dissent, 491 U.S. at 775, 109 S.Ct. at 2743-44 (Marshall, J., dissenting) which refer to this language in the majority opinion as "tacitly assum[ing] that the defendant's fee liability goes no further." 491 U.S. at 767, 109 S.Ct. at 2739 (Blackmun, J., concurring)