_____

No. 95-1829
_____

Kalima Jenkins, by her friend,   *
Kamau Agyei; Carolyn Dawson, by  *
her next friend, Richard Dawson;*
Tufanza A. Byrd, by her next    *
friend, Teresa Byrd; Derek A.   *
Dydell; Terrance Cason, by his  *
next friend, Antoria Cason;     *
Jonathan Wiggins, by his next   *
friend, Rosemary Jacobs Love;   *
Kirk Allan Ward, by his next    *
friend, Mary Ward; Robert M.    *
Hall, by his next friend,      *
Denise Hall; Dwayne A.         *
Turrentine, by his next friend, *
Sheila Turrentine; Gregory A.   *
Pugh, by his next friend, David *
Winters, on behalf of         *
themselves and all others     *
similarly situated,        *  Appeal from the United States
                          *  District Court for the
     Plaintiffs - Appellees,  *  Western District of Missouri.
                          *
American Federation of       *
Teachers, Local 691,       *
                          *
     Intervenor - Appellee,   *
                          *
    v.                   *
                          *
State of Missouri; Mel       *
Carnahan, Governor of the State *
of Missouri; Bob Holden,     *
Treasurer of the State of    *
Missouri; Missouri State Board  *
of Education; Peter Herschend,  *
Member of the Missouri State   *
Board of Education; Thomas R.   *
Davis, Member of the Missouri   *
State Board of Education;     *
Robert E. Bartman, Commissioner *
of Education of the State of   *
Missouri; Gary D. Cunningham,   *
Member of the Missouri State   *
Board of Education; Sharon M.   *
Williams, Member of the      *

Missouri State Board of          *
Education; Betty Preston,         *
Member of the Missouri State     *
Board of Education; Russell       *
Thompson, Member of the          *
Missouri State Board of           *
Education; Jacquelline            *
Wellington, Member of the        *
Missouri State Board of           *
Education,                        *
                                  *
        Defendants - Appellants,  *
                                  *
School District of Kansas City;  *
Walter L. Marks, Superintendent  *
thereof; Paul V. Arena, Member    *
of the Board of Directors; John   *
A. Rios, Member of the Board of   *
Directors; Darwin Curls, Member   *
of the Board of Directors;        *
Patricia Kurtz, Member of the    *
Board of Directors; Edward J.     *
Newsome, Member of the Board of  *
Directors; Terry Hamilton-        *
Poore, Member of the Board of    *
Directors; Dr. Julia H. Hill,     *
Member of the Board of            *
Directors; Carol A. Shank,        *
Member of the Board of            *
Directors; John W. Still,         *
Member of the Board of            *
Directors,                        *
                                  *
        Defendants - Appellees.  *

_____

Submitted:  September 12, 1995

Filed:  January 8, 1996
_____

Before McMILLIAN, HEANEY and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

    The State of Missouri appeals from an award of attorneys' fees
to attorneys for the Jenkins class for representing the class in

-2-

opposing the adoption of the ShareNet program as part of a voluntary interdistrict transfer plan. The district court approved the ShareNet program, but we reversed in Jenkins v. Missouri, 38 F.3d 960 (8th Cir. 1994) (Jenkins XII). The State argues that the Jenkins class attorneys are not entitled to fees because ShareNet was not proposed as part of the remedy, and because the State, as well as the Jenkins class, opposed ShareNet. The State also urges us to reconsider our opinion in Jenkins v. Missouri, 967 F.2d 1248 (8th Cir. 1992) (Jenkins Fees IV). We affirm the judgment of the district court.[1]

The Desegregation Monitoring Committee (DMC) proposed a program in which students in suburban districts would communicate by electronic mail or fax with students in the Kansas City, Missouri School District (KCMSD). The district court approved the plan as an initial positive step toward establishing a voluntary interdistrict transfer plan. The Jenkins class, the KCMSD, and the State all appealed from entry of the order. We held in Jenkins XII, 38 F.3d at 965, that the ShareNet plan lay outside the limited area available to the district court in crafting a desegregation remedy under Milliken v. Bradley, 433 U.S. 267 (1977) (Milliken II).

The Jenkins class then sought fees and expenses from the State of Missouri for its role in opposing the ShareNet program. The district court concluded that the class incurred the attorneys' fees in defending the desegregation remedy. Order of February 28, 1995, slip op. at 2. The court rejected the State's arguments that the class was not a prevailing party because it did not obtain a "benefit from victory which was the object of filing the lawsuit." Id. at 1-2. The court also held that whether the State opposed the ShareNet program was not a relevant factor in deciding whether to

_____

[1]The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

award fees under Jenkins Fees IV.  Id. at 2.  The court awarded $14,369.06 in attorneys' fees and expenses.  The State appeals.

## I.

The State first argues that the Jenkins class's fees were not incurred "in defense of the remedy."  This argument is based on language in our opinion in Jenkins Fees IV.  There, we permitted the award of fees to the Jenkins class against the State for defending the Jenkins remedy against attack by intervenors.  At the same time, we reversed the award of fees to the Jenkins class against the State for defending against a collateral attack in a separate lawsuit proposing an alternative, supplemental remedy (the Rivarde case).  Jenkins Fees IV, 967 F.2d at 1252.  The State argues that the ShareNet plan was like the alternative remedy for which we reversed the fee award in Jenkins Fees IV, and that therefore, we must reverse the fee award in this case.

There are several flaws in the State's reasoning.  First, the State ignores the principal holding about the Rivarde case in Jenkins Fees IV.  The primary basis for denying the fee award for Rivarde was simply that Rivarde was a separate lawsuit and the Supreme Court had disapproved of awarding fees in one case for services rendered in another.  We said:

> We believe that this question must be decided on the basis of [Independent Federation of Flight Attendants v. Zipes, 491 U.S. 754 (1989)].  Part of the Zipes majority's reasoning was that plaintiffs should not be awarded fees against intervenors, since they would not be entitled to fees had the intervenors chosen to bring suit in a collateral attack.  491 U.S. at 762.  Rivarde was, of course, a collateral attack, and therefore Zipes would seem to forbid an award of fees in Jenkins for services rendered in Rivarde.

967 F.2d at 1252.  We belabor the obvious to say that the ShareNet

-4-

litigation occurred as part of the <u>Jenkins</u> case.  Therefore, it falls on the compensable side of the line we drew in <u>Jenkins Fees IV</u>.

This case differs critically from <u>Rivarde</u> in that it is not a collateral suit and does not involve fees attributable to an intervention.  To the contrary, ShareNet was proposed by the Desegregation Monitoring Committee, which is not an intervenor or a stranger to the <u>Jenkins</u> suit, but rather an arm of the court. <u>See</u> <u>Jenkins v. Missouri</u>, 890 F.2d 65, 67-68 (8th Cir. 1989) (<u>Jenkins III</u>).  The district court instituted the DMC to help monitor the remedy.  We approved the creation of the DMC.  <u>See</u> <u>id.</u> The DMC suggested the ShareNet program in its official capacity. As we stated in <u>Jenkins Fees IV</u>, <u>Zipes</u> only considered whether it was proper to award fees against an intervenor; <u>Zipes</u> does not address the question of whether a <u>defendant</u> can be held liable for fees incurred in litigation against an intervenor.  967 F.2d at 1250.  Nor does <u>Zipes</u> consider the present situation, where the fees were incurred due to suggestions made by an arm of the court. Because the fees resulted from a suggestion of the DMC, this case presents a stronger case for fee-shifting than did the award of fees for intervenor litigation which we affirmed in <u>Jenkins Fees IV</u>.

The second flaw in the State's reasoning is its erroneous assertion that the defeat of the ShareNet program did not aid the <u>Jenkins</u> remedy.  In making this argument the State relies on language from <u>Jenkins Fees IV</u> that was phrased as a postscript to the primary holding:

> Further, in <u>Rivarde</u> the thrust of the litigation was inadequacy of the remedy and the proposal of an alternative remedy in addition to that in <u>Jenkins</u>.  In issues as close as those before us, this also militates against awarding fees incurred in <u>Rivarde</u>.

967 F.2d at 1252.  We did not state that the distinction between defending against an attack on the remedy and defending against a proposal of a supplemental remedy would, alone, have decided the Jenkins Fees IV case.  The State wrongly concludes that the Jenkins Fees IV case turned on the distinction between defending against proposals that would undo the remedy and those that would supplement it.

Even indulging the State's erroneous assumption, this case involves a program that threatened the integrity of the remedy, as we held in Jenkins XII:

> There was testimony that the [ShareNet] program would more likely have a negative effect on desegregation, that it was incompatible with certain KCMSD magnet themes, and that it might compete with the district's computer magnets for suburban transfer students.  In addition, there was testimony that the requirement of two hour blocks of time set aside for utilization of the program would have a deleterious influence on not only the magnet programs in many of the schools, but the other educational programs in KCMSD.

38 F.3d at 965.  Therefore, the Jenkins class was acting in defense of the remedy when it incurred fees warding off the ShareNet program.  We reject the State's arguments based on Jenkins Fees IV.

## II.

The State argues that the district court could not award the Jenkins class fees against the State for opposing the ShareNet plan, since the State as well as the Jenkins class opposed the plan.  The State cites United States ex rel. Taxpayers Against Fraud v. General Electric Co., 41 F.3d 1032, 1045-46 (6th Cir. 1994); Bigby v. City of Chicago, 927 F.2d 1426, 1429 (7th Cir. 1991); Reeves v. Harrell, 791 F.2d 1481, 1484 (11th Cir. 1986), cert. denied, 479 U.S. 1033 (1987); Action on Smoking and Health v. CAB, 724 F.2d 211, 216 (D.C. Cir. 1984); and Firebird Society v.

<u>Board of Fire Commissioners</u>, 556 F.2d 642, 644 (2d Cir. 1977) (per curiam).  If these cases hold that a court can only award attorneys' fees against a defendant if the fees were incurred directly litigating against the defendant, they conflict with <u>Jenkins Fees IV</u>.  However, since none of these cases involve school desegregation litigation, they are distinguishable from <u>Jenkins Fees IV</u>, which depends on the special nature of school desegregation cases.  <u>See</u> 967 F.2d at 1251.  The reasons we gave for permitting recovery in <u>Jenkins Fees IV</u> still exist here, despite the fact that the State joined the Jenkins class in opposing ShareNet.[2]  In <u>Jenkins Fees IV</u> we stressed that in school desegregation cases there is no money award from which the plaintiffs can pay extra fee expenses.[3]  Moreover, interventions

_____

[2]The State and the Jenkins class both claim that they took the laboring oar in opposing ShareNet.  We need not resolve that question, since it does not bear directly on any issue relevant to our decision.

[3]We said in <u>Jenkins Fees IV</u>:

[G]iven the special nature of desegregation cases, withholding from the plaintiffs the means for paying their attorneys could be devastating to the national policy of enforcing civil rights laws through the use of private attorneys general.  School desegregation cases can continue for years and affect nearly everyone in the community in one way or another.  Various interventions and collateral attacks are not only predictable, but inevitable in litigation affecting so many people in so many different capacities.  Furthermore, a school desegregation case differs from much other litigation in that the main action does not result in a monetary recovery that might enable plaintiffs to finance a defense against collateral attacks on their judgments.  The only monetary award received by the plaintiffs in a desegregation case is simply payment of their attorneys' fees, and it is inequitable to require the attorney for the class to defend against collateral attacks on the award.  Such service is just as much a part of the representation of the plaintiff class as obtaining relief in the first instance.  To deny plaintiffs fees in a desegregation case would be to deny them the means to respond to attacks on the remedy.  Monitoring implementation of the remedy is a crucial part of the

-7-

and the attendant expenses are practically unavoidable in litigation proceeding over long periods of time and affecting so many people. Therefore, attorneys' fees must be available to permit school desegregation plaintiffs to defend the remedy, or else prevailing on the merits against the original defendants would become a meaningless victory for plaintiffs who cannot afford to defend the remedy against later intervenors. We held that it is equitable to require the State, as a constitutional violator, to pay the fees necessary to defend the remedy.

Therefore, the State's opposition to ShareNet does not exempt it from liability for fees under the reasoning of Jenkins Fees IV.

## III.

The State argues that, based on cases from other circuits,[4] we should overrule Jenkins Fees IV. These cases all consider whether defendants can be made to pay plaintiffs' fees incurred in litigating against intervenors; those cases are not relevant here, where the litigation did not involve an intervenor, but the DMC, an arm of the court.

---

> plaintiffs' function in these cases: "Services devoted to reasonable monitoring of the court's decrees, both to insure full compliance and to ensure that the plan is indeed working to desegregate the school system, are compensable services. They are essential to the long-term success of the plaintiff's suit." Northcross v. Board of Educ., 611 F.2d 624, 637 (6th Cir. 1979), cert. denied, 447 U.S. 911 (1980).
>
> [Moreover,] the State, unlike the intervenor in Zipes, is a constitutional violator, and not entitled to the solicitude Zipes showed the "blameless" intervenor. See 491 U.S. at 761.

967 F.2d at 1251.

[4]These include the cases we discuss at page 6, supra, and Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 177 (4th Cir. 1994), which disagrees with our reading of Zipes.

-8-

We further observe that none of the cases relied upon by the State involved defending or monitoring implementation of a desegregation remedy. We thus do not see these cases as contrary appellate authority to our decision in <u>Jenkins Fees IV</u>.

Finally, <u>Jenkins Fees IV</u>, as a decision of a panel, is the law of the circuit and binds other panels. It may only be reconsidered and overruled by the court en banc. Even though the same three judges hearing this case were the panel in <u>Jenkins Fees IV</u>, we are not at liberty to refuse to follow our earlier case, and the State has not advanced any argument of sufficient merit to convince us to suggest rehearing en banc.

We affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.