No. 96-2809

Chinyere Jenkins, by her next          *
friend, Joi Jenkins; Nicholas          *
Paul Winchester-Rabelier, by           *
his next friend, Paula                  *
Winchester; Margo Vaughn-Bey,           *
by her next friend, Franklin            *
Vaughn-Bey; Nicholas C. Light,          *
by his next friend, Marian              *
Light; Stephon D. Jackson, by           *
his next friend, B. J. Jones;           *
Travis N. Peter, by his next            *
friend, Debora Chadd-Peter;             *
Leland Guess, by his next               *
friend, Sharon Guess,                   *
                                        *
     Plaintiffs - Appellants            *   Appeals from the United States
                                        *   District Court for the
American Federation of                  *   Western District of Missouri.
Teachers, Local 691,                    *
                                        *
     Intervenor - Appellee              *
                                        *
     v.                                 *
                                        *
State of Missouri; Mel                  *
Carnahan, Governor of the State         *
of Missouri; Bob Holden,                *
Treasurer of the State of               *
Missouri; Missouri State Board          *
of Education; Peter Hershend,           *
Member of the Missouri State            *
Board of Education; Thomas R.           *
Davis, Member of the Missouri           *
State Board of Education;               *
Robert E. Bartman, Commissioner         *
of Education of the State of            *
Missouri; Gary D. Cunningham,           *
Member of the Missouri State            *
Board of Education; Terry M.            *
Riley, Member of the Board of           *
Directors; Sharon M. Williams,          *
Member of the Missouri State            *
Board of Education; Lance               *
Loewenstein, Member of the Board*

of Directors; Betty Preston,                *
Member of the Missouri State                *
Board of Education; Russell                 *
Thompson, Member of the                     *
Missouri State Board of                      *
Education; Jacquelline                       *
Wellington, Member of the                    *
Missouri State Board of                      *
Education; Marilyn Simmons,                  *
Member of the Board of                       *
Directors; Sandy Aguire Mayer,              *
Member of the Board of                       *
Directors; School District of               *
Kansas City; Dr. Henry D.                    *
Williams, Superintendent                     *
thereof; John A. Rios, Member               *
of the Board of Directors;                   *
Darwin Curls, Member of the                  *
Board of Directors; Patricia                 *
Kurtz, Member of the Board of               *
Directors; Edward J. Newsome,               *
Member of the Board of                       *
Directors; John W. Still,                    *
Member of the Board of                       *
Directors, *                                 *
                                             *
    Defendants - Appellees    *


————————

No. 96-2918

————————


Chinyere Jenkins, by her next               *
friend, Joi Jenkins; Nicholas               *
Paul Winchester-Rabelier, by                *
his next friend, Paula                       *
Winchester; Margo Vaughn-Bey,               *
by her next friend, Franklin                *
Vaughn-Bey; Nicholas C. Light,              *
by his next friend, Marian                  *
Light; Stephon D. Jackson, by               *
his next friend, B. J. Jones;               *
Travis N. Peter, by his next                *
friend, Debora Chadd-Peter;                 *
Leland Guess, by his next                    *
friend, Sharon Guess,                        *
                                             *
    Plaintiffs - Appellees    *
                                             *
American Federation of                       *
Teachers, Local 691,                         *

-2-

```
                                        *
     Intervenor - Appellee             *
                                        *
          v.                            *
                                        *
State of Missouri; Mel Carnahan,*
Governor of the State of                *
Missouri; Bob Holden, Treasurer         *
of the State of Missouri;               *
Missouri State Board of                 *
Education; Peter Herschend,             *
Member of the Missouri State            *
Board of Education; Thomas R.           *
Davis, Member of the Missouri           *
State Board of Education;               *
Robert E. Bartman, Commissioner         *
of Education of the State of            *
Missouri; Gary D. Cunningham,           *
Member of the Missouri State            *
Board of Education; Rice Pete           *
Burns, Member of the Missouri           *
State Board of Education;               *
Sharon M. Williams, Member of           *
the Missouri State Board of             *
Education; Betty Preston,               *
Member of the Missouri State            *
Board of Education; Jacquelline         *
Wellington, Member of the               *
Missouri State Board of                 *
Education; Russell Thompson,            *
Member of the Missouri State            *
Board of Education,                     *
                                        *
     Defendants - Appellants            *
                                        *
School District of Kansas City;         *
Dr. Henry D. Williams,                  *
Superintendent thereof; Terry           *
M. Riley, Member of the Board           *
of Directors; Lance                     *
Loewenstein, Member of the              *
Board of Directors; Marilyn             *
Simmons, Member of the Board            *
of Directors; Sandy Aguire              *
Mayer, Member of the Board of           *
Directors; John A. Rios, Member         *
of the Board of Directors;              *
Darwin Curls, Member of the             *
Board of Directors; Patricia            *
Kurtz, Member of the Board of           *
Directors; Edward J. Newsome,           *
Member of the Board of                  *
```

Directors; Dr. Julia H. Hill,          *
Member of the Board of                 *
Directors; John W. Still,              *
Member of the Board of                 *
Directors,                             *
                                       *
        Defendants - Appellees         *

                    _____

                    No. 96-3215
                    _____


Chinyere Jenkins, by her next          *
friend, Joi Jenkins; Nicholas          *
Paul Winchester-Rabelier, by           *
his next friend, Paula                 *
Winchester; Margo Vaughn-Bey,          *
by her next friend, Franklin           *
Vaughn-Bey; Nicholas C. Light,         *
by his next friend, Marian             *
Light; Stephon D. Jackson, by          *
his next friend, B. J. Jones;          *
Travis N. Peter, by his next           *
friend, Debora Chadd-Peter;            *
Leland Guess, by his next              *
friend, Sharon Guess,                  *
                                       *
        Plaintiffs - Appellees         *
                                       *
American Federation of                 *
Teachers, Local 691,                   *
                                       *
        Intervenor - Appellee          *
                                       *
        v.                             *
                                       *
State of Missouri; Mel                 *
Carnahan, Governor of the State        *
of Missouri; Bob Holden,               *
Treasurer of the State of              *
Missouri; Missouri State Board         *
of Education; Peter Herschend,         *
Member of the Missouri State           *
Board of Education; Thomas R.          *
Davis, Member of the Missouri          *
State Board of Education;              *
Robert E. Bartman, Commissioner        *
of Education of the State of           *
Missouri; Gary D. Cunningham,          *
Member of the Missouri State           *

-4-

Board of Education; Rice Pete          *
Burns, Member of the Missouri          *
State Board of Education;              *
Sharon M. Williams, Member of          *
the Missouri State Board of            *
Education; Betty Preston,              *
Member of the Missouri State           *
Board of Education; Jacquelline        *
Wellington, Member of the              *
Missouri State Board of                *
Education; Russell Thompson,           *
Member of the Missouri State           *
Board of Education,                    *
                                       *
        Defendants - Appellants        *
                                       *
School District of Kansas City;        *
Dr. Henry D. Williams,                 *
Superintendent thereof; Terry          *
M. Riley, Member of the Board          *
of Directors; Lance                    *
Loewenstein, Member of the             *
Board of Directors; Marilyn            *
Simmons, Member of the Board           *
of Directors; Sandy Aguire             *
Mayer, Member of the Board of          *
Directors; John A. Rios,               *
Member of the Board of                 *
Directors; Darwin Curls,               *
Member of the Board of                 *
Directors; Patricia Kurtz,             *
Member of the Board of                 *
Directors; Edward J. Newsome,          *
Member of the Board of                 *
Directors; Dr. Julia H. Hill,          *
Member of the Board of                 *
Directors; John W. Still,              *
Member of the Board of                 *
Directors, *
                                       *
        Defendants - Appellees.        *

                    _____

                    No. 96-3568
                    _____

Chinyere Jenkins, by her next          *
friend, Joi Jenkins; Nicholas          *
Paul Winchester-Rabelier, by           *
his next friend, Paula                 *
Winchester; Margo Vaughn-Bey,          *

by her next friend, Franklin          *
Vaughn-Bey; Nicholas C. Light,        *
by his next friend, Marian            *
Light; Stephon D. Jackson, by         *
his next friend, B. J. Jones;         *
Travis N. Peter, by his next          *
friend, Debora Chadd-Peter;           *
Leland Guess, by his next             *
friend, Sharon Guess,                 *
                                      *
        Plaintiffs - Appellees        *
                                      *
American Federation of                *
Teachers, Local 691,                  *
                                      *
     Intervenor - Appellee            *
                                      *
        v.                            *
                                      *
State of Missouri; Mel                *
Carnahan, Governor of the             *
State of Missouri; Bob Holden,        *
Treasurer of the State of             *
Missouri; Missouri State Board        *
of Education; Peter Herschend,        *
Member of the Missouri State          *
Board of Education; Thomas R.         *
Davis, Member of the Missouri         *
State Board of Education;             *
Robert E. Bartman, Commissioner       *
of Education of the State of          *
Missouri; Gary D. Cunningham,         *
Member of the Missouri State          *
Board of Education; Rice Pete         *
Burns, Member of the Missouri         *
State Board of Education;             *
Sharon M. Williams, Member of         *
the Missouri State Board of           *
Education; Betty Preston,             *
Member of the Missouri State          *
Board of Education; Jacquelline       *
Wellington, Member of the             *
Missouri State Board of               *
Education; Russell Thompson,          *
Member of the Missouri State          *
Board of Education,                   *
                                      *
        Defendants - Appellants       *
                                      *
School District of Kansas             *
City; Dr. Henry D. Williams,          *
Superintendent thereof; Terry         *

-6-

M. Riley, Member of the Board          *
of Directors; Lance                    *
Loewenstein, Member of the             *
Board of Directors; Marilyn            *
Simmons, Member of the Board           *
of Directors; Sandy Aguire             *
Mayer, Member of the Board of          *
Directors; John A. Rios,               *
Member of the Board of                 *
Directors; Darwin Curls,               *
Member of the Board of                 *
Directors; Patricia Kurtz,             *
Member of the Board of                 *
Directors; Edward J. Newsome,          *
Member of the Board of                 *
Directors; Dr. Julia H. Hill,          *
Member of the Board of                 *
Directors; John W. Still,              *
Member of the Board of                 *
Directors, *                           *
                                       *
      Defendants - Appellees.          *

_____

Submitted:  December 9, 1996

Filed:  January 10, 1997

_____

Before McMILLIAN, HEANEY, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

The State of Missouri appeals from orders of the district court[1] establishing a remedy plan and budget for the 1996-97 school year in the ongoing Kansas City, Missouri School District desegregation case. The State also appeals from the district court's order phasing out the Missouri City voluntary interdistrict transfer program. The Jenkins Class cross-appeals from the order phasing out the Missouri City program and from the order

_____

[1]The Honorable Russell G. Clark, Senior Judge, United States District Court for the Western District of Missouri.

-7-

prohibiting use of desegregation funds for marketing and recruitment efforts directed solely at nonminority students living within the KCMSD who attend private and parochial schools.  We affirm the district court's order with respect to the budget for the 1996-97 school year, remand the Missouri City Program issue for further consideration, and reverse and remand the order relating to recruiting resident nonminorities who attend private schools.[2]

In Missouri v. Jenkins, 115 S. Ct. 2038 (1995) (Jenkins III), the Court reversed an order funding salary increases for KCMSD personnel, which the district court had imposed to increase KCMSD's desegregative attractiveness.  Id. at 2055.  The Court also reversed an order funding quality education programs because the order was based on findings that the student achievement levels were at or below national norms based on test scores.  The Supreme Court remanded for reconsideration of the quality education order under the three-part test of Freeman v. Pitts, 503 U.S. 467, 491 (1992).  It further instructed that the district court "bear in mind that its end purpose is not only `to remedy the violation' to the extent practicable, but also `to restore state and local authorities to the control of a school system that is operating in compliance with the Constitution.'"  Id. at 2056 (quoting Freeman, 503 U.S. at 489).

After the Supreme Court's remand, the State moved for an order declaring the KCMSD unitary and relinquishing jurisdiction over the entire case.  Moreover, on May 21, 1996, the State and the KCMSD entered into an agreement that the State would continue to make

_____

[2]The orders on appeal are the July 15, 1996 order with respect to the 1996-97 budget; the order of August 30, 1996, denying stay pending appeal; and the March 7, 1996 order, disapproving the use of funds for the purpose of recruiting resident nonminorities and establishing a phaseout plan for the Missouri City Voluntary Interdistrict Transfer Plan.  The Jenkins Class moved to alter or amend this order, and the district court denied the motion on May 31, 1996.

payments over the next three years, with its liability to end at that time, subject to court approval. The Jenkins class was not a party to the agreement. In light of the magnitude of the issues raised by the unitariness motion and the settlement agreement, the district court set both matters for a hearing to commence on January 13, 1997.

In the interim a budget for the upcoming 1996-97 school year was established. The parties were able for the most part to agree on a budget as an interim measure. The parties agreed to a 1996-97 remedy plan and budget that reduced the KCMSD budget to $35 million below the preceding year, subject to a list of items on which the Jenkins Class disagreed with the other parties regarding the necessity of expenditures. That list included three of the budget items at issue in this appeal: the fourth-round budget cuts, the extended day program, and the permanent substitutes. The parties agreed that although there would have to be a hearing to resolve the disputed budget issues, the weighty issues raised by the Supreme Court opinion would be reserved for later resolution. In particular, the parties agreed:

> Certain parties contend that the State and the KCMSD have a continuing obligation to eliminate the remaining effects of de jure segregation to the extent practicable. The State denies that there are such remaining effects. All parties agree that they will not present any evidence at the June 1996 hearing on this issue, that no findings will be requested on this issue, that the Court need not enter any findings on this issue for the purpose of resolving the disputes among the parties or ordering implementation of any desegregation remedies proposed by any of the parties for the 1996-97 school year, and that no party will challenge any remedy component currently requested by any party and ordered by the Court for the 1996-97 school year on that basis.

The district court generally approved this stipulation, but the court disapproved the agreement to reserve consideration of the Missouri City transfer program and the expenditure of funds for advertising aimed at nonminority private and parochial school

students within the KCMSD.  The court found that it was in the best interests of all the parties to resolve those two issues sooner, rather than later.  Order of March 7, 1996, slip op. at 2.  Therefore, the court did not consider those two issues to be subject to the Stipulation.

In considering the Missouri City transfer program, the district court concluded that the program was a type of interdistrict relief not permitted by the Supreme Court's reasoning in Jenkins III.  Slip op. at 3.  However, the district court found it necessary and equitable to take into account the interests of the students who had volunteered to be a part of the transfer program and whose educations would be disrupted by an abrupt termination of the program.  Id. at 4-5.  The court held:

> Balancing the interests of the participants with those of the State, the Court finds that equity requires that the present participants in the program be allowed to remain with present State funding per pupil until they graduate the eighth grade or voluntarily leave the program.  The Court believes this process of winding down the Missouri City program resolves the difficulties of this situation in a reasonable equitable manner.

Id. at 5.

The court next considered the permissibility of using desegregation funds for advertising aimed at attracting nonminority students who reside in the KCMSD but attend private or parochial schools.  The court held:  "The State is correct that Jenkins III forecloses the use of desegregation funds for recruitment efforts where the sole purpose of the particular recruitment project is aimed at encouraging resident nonminorities currently in private or parochial schools to enroll in the KCMSD."  Id. at 5.  The court held, however, that the recruitment and marketing department of the KCMSD still had a legitimate function in encouraging voluntary transfer of students

-10-

within the KCMSD itself to magnet schools.  Id. at 6-7.  To the extent that this sort of advertising reaches nonminority private and parochial students incidentally, it is of no legal import.  Id. at 7.  The court therefore approved the proposed budget item for the recruiting and marketing department, but ordered that the department should not direct any efforts solely at recruiting nonminority students who reside in the KCMSD but attend private schools.  Id. at 7-8.  The court also stated that it considered the State to have waived any objection to this item for the 1996-97 school year by the terms of the Stipulation.  Id. at 7.

In a later order, the district court reached the items that had been reserved for its consideration by the terms of the Stipulation. The court considered the Jenkins Class's proposal to restore funding for the extended day program, less $1 million the Jenkins Class estimated the KCMSD could collect by charging fees for enrollment in the program for children who do not qualify for free or reduced price lunch.  Order of July 15, 1996, slip op. at 8.  The court ruled that the extended day program should be preserved.  The court explicitly based its holding on the state of the record before it, stating:

> Plaintiffs presented substantial evidence in support of the current Extended Day Program.  The KCMSD does not dispute the sincerity or accuracy of the testimony elicited by plaintiffs. . . .  The Court was presented no evidence that the Extended Day Program as a whole has become ineffective or is an improper component of a desegregation remedy.

Id. at 9.  The court rejected the idea of charging fees for the program based on financial need; since the program was intended to remedy constitutional violations suffered on account of race, not on account of financial status, the Jenkins Class's proposal would result in charging some victims for a remedy to which they were entitled.  Id. at 9-10.

-11-

Next, the court considered the Jenkins Class's objections to the fourth-round budget cuts.  KCMSD had proposed budget cuts in layers, with the first three rounds of cuts being the responsibility of the administration at the affected schools.  The final, or fourth, round of budget cuts was imposed by the KCMSD administration, in some cases over the protest of the school principals.  Again, the court based its decision on the testimony before it.  Principals of some of the affected schools[3] testified that the fourth-round cuts would damage the integrity of their schools' magnet themes.  Id. at 11.  Therefore, the court ordered the fourth-round budget cuts to be reinstated at those seven schools.  Id.  Not all principals were called to testify.  Consequently, the court was unable to make determinations about the advisability of the fourth-round budget cuts at the schools whose principals did not testify, and directed the Desegregation Monitoring Committee to evaluate whether the cuts should be made at those schools.  Id. at 11-12.

The Jenkins Class also proposed that the KCMSD be required to maintain permanent substitutes at each of the district's schools.  The court found that permanent substitutes were not generally necessary except in the foreign language magnets.  These schools depend on immersion in the foreign language, which entails teaching substantive courses in the foreign language.  Because of the difficulty in finding substitutes qualified to conduct classes in the various languages, the court found it appropriate that permanent substitutes be retained at the language magnets.  Id. at 13.

---

[3]The schools were Trailwoods Elementary, Knotts Elementary, North Rock Creek/Korte, J.A. Rogers Middle School, Kansas City Middle School for the Performing Arts, the Foreign Language Middle School, and East High School.

## I.

### A.

The State attacks the district court's reinstatement of the extended day program, the fourth-round budget cuts in the seven schools, and the permanent substitutes in the foreign language magnets. The State contends that these expenditures violate the command of Jenkins III to consider the interest in local autonomy and to limit the aim of remedial programs to restoring the victims of de jure segregation to the position they would have occupied absent the constitutional violation. These arguments depend on antecedent assumptions or findings about what vestiges of injury remain in the KCMSD. The State stipulated away its right to make this sort of argument at this stage of the litigation in its agreement limiting the issues to be decided in connection with the 1996-97 budget:

> Certain parties contend that the State and the KCMSD have a continuing obligation to eliminate the remaining effects of de jure segregation to the extent practicable. The State denies that there are such remaining effects. All parties agree that they will not present any evidence at the June 1996 hearing on this issue, that no findings will be requested on this issue, that the Court need not enter any findings on this issue for the purpose of resolving the disputes among the parties or ordering implementation of any desegregation remedies proposed by any of the parties for the 1996-97 school year . . . .

The effect of the Stipulation was before us on the motion to stay. We there held the issue raised by the State to be foreclosed by the Stipulation. Order of October 23, 1996. We have given further detailed study to the terms of the Stipulation and reach the same conclusion as we did before.

By arguing that Jenkins III requires the district court to take action without regard to the existence and extent of

-13-

vestiges of segregation, the State shows an imperfect understanding of the Jenkins III holding.  The reasoning in Jenkins III depends on a framework of three factors that must be balanced against each other in crafting a desegregation remedy under Milliken v. Bradley, 433 U.S. 267, 280-81 (1977) (Milliken II): (1) the nature of the remedy must be determined by the nature and scope of the constitutional violation; (2) the decree must remedy the unconstitutional condition by restoring the victims as nearly as possible to the position they would have occupied had the violation never taken place; and (3) the decree must take into account the importance of state and local autonomy.  115 S. Ct. at 2049. The Supreme Court emphasized that  remedial orders should not be crafted taking the first factor into consideration without adequate regard for the second two.  Id.  This certainly does not lead to the conclusion that such orders can be crafted only by reference to the third factor, without consideration of the first two factors.  Yet, the State would have us assess the propriety of the three disputed programs in light of Jenkins III when the State has stipulated that the court shall make no findings with regard to the second factor, whether there exists vestiges of the unconstitutional condition.  The Supreme Court ordered a balancing process; the State asks us to carry out that process with only one side of the scale.  This is impossible, and would be erroneous under Jenkins III.

Despite its Stipulation, the State argues that the court erred in ordering relief that benefits students who are not victims of segregation.  This assumes the very fact that the State stipulated would not be resolved--whether there exist to this day vestiges or after-effects of the unconstitutional system that still affect student achievement levels in the KCMSD.  The Supreme Court mentioned that students in kindergarten through grade 7 have always attended AAA schools, and that the older students have received remedial education programs for up to seven years.  Jenkins III,  115 S. Ct. at 2056. However, the

-14-

Supreme Court did not say that there were no remaining victims of the after-effects of segregation. Rather, the Court remanded for further proceedings. "But these are questions that the Court rightly leaves to be answered on remand." Id. at 2061. (O'Connor, J., concurring). The State's inference that the Supreme Court considered the State's work done and the KCMSD unitary is grossly premature, as well as inconsistent with the Stipulation, which acknowledged this to be a disputed question. Until we know the answer to that question, we certainly cannot say which students are affected by vestiges of segregation and in what way. Consequently, the State's contention that the district court's orders benefited non-victims begs the question by assuming that we know who the remaining victims are.

In light of the Stipulation which the State entered and the district court approved, we can only view the 1996-97 budget as an interim measure. Clearly, the matter had to be resolved before the school year and yet, a full adjudication of the constitutional questions inherent in the matter would require hearings and findings which could not be achieved before the school year began. In response to this dilemma, the parties entered into the Stipulation reserving the constitutional questions for a later day. With this compromise before it, the district court acted properly in judging the propriety of the disputed programs by criteria that remained available after the Stipulation. In the case of the fourth-round budget cuts and the permanent substitutes, the court decided that doing away with the particular programs would undermine the magnet themes. In the case of the extended day program, it decided simply that the program was beneficial to the students. The Supreme Court certainly did not disapprove either of the idea of magnet schools, see Jenkins III, 115 S. Ct. at 2051 ("We previously have approved of intradistrict desegregation remedies involving magnet schools"), or of improving the quality of education offered in the district, see id. at 2050 ("Thus, the proper response by the

District Court should have been to eliminate to the extent practicable the vestiges of prior <u>de jure</u> segregation within the KCMSD: a system-wide reduction in student achievement and the existence of 25 racially identifiable schools. . . ."). The Supreme Court only held that the appropriateness of orders pursuing those goals must be ascertained by balancing all three <u>Milliken II</u> factors, and the State stipulated that the district court would not determine one of those factors in adjudicating the propriety of the three programs in question.

In sum, the State's arguments attacking the approval of the three disputed programs for the 1996-97 year depend on a reasoning process that the district court could not complete because of the parties' Stipulation. The district court appropriately considered the propriety of those programs as an interim measure, as was contemplated by the parties' agreement. We therefore affirm the district court's order regarding the extended day program, permanent substitutes in the foreign language magnets, and the restoration of the fourth-round budget cuts in the seven schools.

**B.**

The State argues that the record evidence showed the extended day program is "just babysitting," and that therefore its only possible purpose is to attract suburban students. While the extended day program undeniably serves a child care function, there was a great deal of testimony before the court that the program also serves an educational purpose. We have reviewed the testimony the State cites, and it certainly does not compel the conclusion that the extended day program only exists to attract suburban students.

## C.

The State also argues that the district court's order of July 15, 1996 contravenes <u>Jenkins III</u>, and that the district court's authority is simply to execute the mandate of <u>Jenkins III</u>. It argues that by ordering the three disputed programs the district court has refused to follow the Supreme Court's mandate that the process of returning KCMSD to local control begin in earnest.

The State argues that <u>Jenkins III</u> requires restoration of local control at the earliest practical date. The argument is based on the State's reading of <u>Jenkins III</u> that "the District Court must bear in mind that its end purpose is . . . to restore state and local authorities to . . . control," 115 S. Ct. at 2056 (quotation omitted). The State argues that the Supreme Court emphasized the vital national tradition of local autonomy of school districts and ordered that no additional programs be imposed that unwarrantably postpone the day when KCMSD will be able to operate on its own. <u>Id.</u> at 2056.

The shortcoming of the State's argument is that it edits the language of the Supreme Court in a manner that presents less than a full and fair reading of the Court's holding. The Court in <u>Jenkins III</u> certainly refers to the restoration of local control on several occasions, <u>see</u>, <u>e.g.</u>, <u>id.</u> at 2054, 2056, and the Court emphasizes the goal of returning the school district to local control, but the other part of the equation is that the district court must consider whether the previously segregated district has achieved partial unitary status. <u>Jenkins III</u> points out that the State had not sought a declaration of partial unitary status with respect to quality education programs. <u>Id.</u> at 2055. In rejecting arguments relating to whether national norms could be considered in evaluating the success of educational programs the Supreme Court stated:

But this clearly is not the appropriate test to be applied in deciding whether a previously segregated district has achieved partially unitary status. See Freeman, 503 U.S. at 491; Dowell, 498 U.S. at 249-50. The basic task of the District Court is to decide whether the reduction in achievement by minority students attributable to prior de jure segregation has been remedied to the extent practicable. . . .

In reconsidering this order, the District Court should apply our three-part test from Freeman v. Pitts, supra, 503 U. S., at 491, 112 S. Ct., at 1445-1446.

Id. The three-part test for partial unitariness was stated in Freeman v. Pitts, 503 U.S. at 491:

A court's discretion to order the incremental withdrawal of its supervision in a school desegregation case must be exercised in a manner consistent with the purposes and objectives of its equitable power. Among the factors which must inform the sound discretion of the court in ordering partial withdrawal are the following: whether there has been full and satisfactory compliance with the decree in those aspects of the system where supervision is to be withdrawn; whether retention of judicial control is necessary or practicable to achieve compliance with the decree in other facets of the school system; and whether the school district has demonstrated, to the public and to the parents and students of the once disfavored race, its good-faith commitment to the whole of the court's decree and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance.

Jenkins III concludes:

On remand, the District Court must bear in mind that its end purpose is not only "to remedy the violation" to the extent practicable, but also "to restore state and local authorities to the control of a school system that is operating in compliance with the Constitution." Freeman, 503 U.S. at 489.

115 S. Ct. at 2056.

The last passage above demonstrates that the State, in

-18-

stressing the return to local control, has completely ignored the Court's direction to engage in the inquiry required by <u>Freeman v. Pitts</u>, to ascertain whether unitary status has been achieved, whether the results of segregation have been remedied to the extent practicable, and whether a school system operating in compliance with the Constitution may be restored to state and local control.

We thus reject the argument the State makes that <u>Jenkins III</u> has mandated determination of the issues now before us. The Supreme Court has made clear in <u>Jenkins III</u> that the State did not seek a declaration of partial unitary status with respect to the quality education programs, 115 S. Ct. at 2055, but rather that the case now must be returned to the district court to make that inquiry.

In view of the parties' stipulation and the Supreme Court's remand to the district court to consider the question of unitary status under <u>Freeman</u>, it is not necessary that we reach the merits of the arguments advanced by the State.

## II.

The Jenkins Class cross-appeals, arguing that the district court erred in prohibiting the use of desegregation funds for marketing and recruitment efforts directed solely at drawing private school students living within the KCMSD boundaries. In its orders of March 7, 1996, slip op. at 5-7, and May 31, 1996, slip op. at 2-3, the district court ruled that the desegregative attractiveness discussion in <u>Jenkins III</u> forbade use of desegregation funding to recruit nonminority private school students living within the KCMSD, as well as to recruit suburban nonminorities. The district court reasoned that "private and parochial schools are essentially districts within themselves," slip op. at 6, and that therefore spending desegregation money to

-19-

recruit students from those schools was based upon the same impermissible interdistrict goals as recruiting students from suburban public school districts.  Id.

The Jenkins Class argues that the district court drew incorrect inferences from Jenkins III in considering private schools to be equivalent to other public school districts.  The Class argues that the reason the Supreme Court disapproved of interdistrict relief was to avoid "burdening other public school districts which were not constitutional violators, not [to protect] independent private entities."  The Class also points out that the district court ruled before these issues had been thoroughly briefed.

We first must concede that the record with respect to this issue may have been most generally developed with respect to the differences between private and parochial schools and public schools, and we have questions with respect to whether they are "essentially districts within themselves" as found by the district court.  We believe, however, that this issue can be addressed again with a more complete record on remand.

We conclude that the legal underpinning in the district court's analysis runs contrary to Jenkins III.  Jenkins III discussed at some length the difference between intradistrict violations and interdistrict violations, and the remedies that may be appropriate for each.  115 S. Ct. at 2049-54.  It concluded that the interdistrict goal of attracting students from surrounding districts was an interdistrict remedy for an intradistrict violation.  Id. at 2052.

The following passages from Jenkins III demonstrate the basis for the Court's ruling:

What we meant in <u>Milliken I</u> [<u>Milliken v. Bradley</u>, 418 U.S. 717 (1974)] by an interdistrict violation was a violation that caused segregation between adjoining districts.

115 S. Ct. at 2052.  In <u>Jenkins III</u>, the Supreme Court said that nothing in <u>Milliken I</u> suggested that the district court could have required the State of Michigan to implement a magnet program designed to achieve the same interdistrict transfer of students that <u>Milliken I</u> had held to be beyond its remedial authority.  115 S. Ct. at 2052.  <u>Jenkins III</u> continued:

> Here, the District Court has done just that:  created a magnet district of the KCMSD in order to serve the <u>inter</u>district goal of attracting nonminority students <u>from the surrounding SSD's</u> and redistributing them within the KCMSD.  The District Court's pursuit of "desegregative attractiveness" is beyond the scope of its broad remedial authority.[4]

---

[4]<u>Jenkins III</u> also made the following statements:

> The purpose of desegregative attractiveness has been not only to remedy the system-wide reduction in student achievement, but also to attract nonminority students not presently enrolled in the KCMSD. . . .
>
> . . .
>
> The District Court's remedial plan in this case, however, is not designed solely to redistribute the students within the KCMSD in order to eliminate racially identifiable schools within the KCMSD.  Instead, its purpose is to attract nonminority students from outside the KCMSD schools.  But this <u>inter</u>district goal is beyond the scope of the <u>intra</u>district violation identified by the District Court.  In effect, the District Court has devised a remedy to accomplish indirectly what it admittedly lacks the remedial authority to mandate directly:  the interdistrict transfer of students.  639 F. Supp. at 38  ("`[B]ecause of restrictions on this Court's remedial powers in restructuring the operations of local and state government entities,' any <u>mandatory</u> plan which would go beyond the boundary lines of KCMSD goes far beyond the nature and extent of the constitutional violation [that] this Court found existed").

Id. at 2052 (second emphasis added).  The Supreme Court then discussed the issue of white flight and concluded:

> The record here does not support the District Court's reliance on "white flight" as a justification for a permissible expansion of its intradistrict remedial authority through its pursuit of desegregative attractiveness.

115 S. Ct. at 2053.

This language from Jenkins III indicates that the remedy cannot be designed to recruit students from adjoining districts to the Kansas City schools in an effort to remedy intradistrict violations.  We do not read Jenkins III as restricting the KCMSD's efforts to attract back to its schools those residents of the district who now attend private and parochial schools.  As the Jenkins Class points out, the funding for the schools under the state procedures is based upon enrollment, and an increase in enrollment is in the best interest of KCMSD.  As the district court discussed, efforts directed at KCMSD students may have an impact on KCMSD resident students in parochial and private schools. Slip op. at 7.  As pointed out by Justice O'Connor, such effects are of no consequence.  See Jenkins III, 115 S. Ct. at 2060 (O'Connor, J., concurring).

Thus, we conclude that the district court's analysis rested on a questionable reading of Jenkins III, and we remand this

---

In Milliken I we determined that a desegregation remedy that would require mandatory interdistrict reassignment of students throughout the Detroit metropolitan area was an impermissible interdistrict response to the intradistrict violation identified.

115 S. Ct. at 2051 (emphasis in last paragraph added).

-22-

issue for further consideration.

### III.

The State argues that the district court abused its discretion in ordering continued funding of the Missouri City Interdistrict Transfer Program for eight additional years, because it is an impermissible interdistrict remedy in this intradistrict case. The Jenkins Class argues that the district court erred in ordering the phaseout of the program. Only thirteen students participate in this program. No other suburban schools have accepted minority students from KCMSD.

The district court's order of March 7, 1996, recognizes that the Missouri City Program is an interdistrict program based upon a stipulation, and that this stipulation can be modified by changing circumstances, such as those provided by the Supreme Court opinion in Jenkins III. Slip op. at 4 (citing Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 390 (1992)). The district court, however, looked to the limits of this responsibility to determine whether the proposed modification is suitably tailored to the changing circumstances. Slip op. at 4-5. In doing so, it rejected the State's argument that the program should be discontinued after one year, but looked to the public interest in seeing the State honor its agreements made on the public's behalf. The district court therefore ordered that the present participants in the program be allowed to remain with present state funding until they graduate eighth grade or voluntarily leave the program.

The State's argument that the court lacks authority to order such a program is somewhat weakened by its admission in oral argument that the district court should discontinue the program with reasonable promptness, at most the completion of the school year in question. The State's position at least approaches a

-23-

concession that the district court may determine what is reasonable promptness, and the proper length of the phaseout.

The State makes a robust argument that Jenkins III bars such interdistrict remedies. On the other hand, the legal underpinning in the past has been that voluntary plans can be a part of an intradistrict remedy and that the burden can be placed on the constitutional violator, in this instance, the State of Missouri.

The Missouri City order was entered on March 7, 1996, one of the first orders entered by the court following Jenkins III, and it was not thoroughly briefed. While the State had filed a motion for declaration of unitary status by March 7, the State had not made an effort to call for a hearing on this issue. After the March 1996 order, the State and KCMSD entered a proposed agreement for a three-year phaseout of the desegregation remedy, subject to court approval. Both the unitariness and settlement matters were set for hearing.

Under these circumstances, we deem it unnecessary to discuss the arguments in further detail. In view of the State's concession that some reasonable phaseout is authorized, we think it appropriate to remand this issue to the district court for further consideration after the hearing concerning unitary status and the proposed settlement.

. . .

The opinion of the Supreme Court in Jenkins III gave specific directions to the district court to reconsider the order on quality education programs under the three-part test from Freeman v. Pitts. The Court makes clear the necessity for detailed and specific findings by the district court and that it identify the incremental effect that segregation has had on minority student

-24-

achievement, and the specific goals of the quality education programs. 115 S. Ct. at 2055. It further instructed that the district court should "sharply limit, if not dispense with, its reliance" on improved achievement on test scores. Id. It cautioned that the quality education programs should be tailored to remedy the injuries suffered by the victims of prior de jure segregation. Id. at 2056.

We think it also appropriate to observe the comment of Justice O'Connor, who joined in the opinion of the Court, but in her concurring opinion noted that the Court refrained from addressing the propriety of all the remedies the district court has ordered, revised, and extended in the eighteen-year-old history of the case. While these remedies may be improper to the extent that they serve the goals of desegregative attractiveness and suburban comparability that were held to be impermissible, "conversely, the District Court may be able to justify some remedies without reliance on these goals. But these are questions that the Court rightly leaves to be answered on remand." 115 S. Ct. at 2061 (O'Connor, J., concurring).

We therefore affirm the district court's disposition of the 1996-97 budget issues, and reverse and remand on the private school recruiting issue and the Missouri City transfer program issue.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.