127 F.3d 709
 121 Ed. Law Rep. 914
 Chinyere JENKINS, by her next friend, Joi JENKINS; Nicholas
Paul Winchester-Rabelier, by his next friend, Paula
Winchester; Margo Vaughn-Bey, by her next friend, Franklin
Vaughn-Bey; Nicholas C. Light, by his next friend, Marian
Light; Stephon D. Jackson, by his next friend, B.J. Jones;
Travis N. Peter, by his next friend, Debora Chadd-Peter;
Leland Guess, by his next friend, Sharon Guess, Plaintiffs-Appellants,
American Federation of Teachers, Local 691, Intervenor below,
v.
STATE OF MISSOURI; Mel Carnahan, Governor of the State of
Missouri; Bob Holden, Treasurer of the State of Missouri;
Missouri State Board of Education; Peter Herschend, Member
of the Missouri State Board of Education; Thomas R. Davis,
Member of the Missouri State Board of Education; Robert E.
Bartman, Commissioner of Education of the State of Missouri;
Gary D. Cunningham, Member of the Missouri State Board of
Education; Rice Pete Burns, Member of the Missouri State
Board of Education; Sharon M. Williams, Member of the
Missouri State Board of Education; Betty Preston, Member of
the Missouri State Board of Education; Jacquelline
Wellington, Member of the Missouri State Board of Education;
Russell Thompson, Member of the Missouri State Board of
Education, Defendants-Appellees,
School District of Kansas City; Dr. Henry D. Williams,
Superintendent thereof; Terry M. Riley, Member of the Board
of Directors; Lance Loewenstein, Member of the Board of
Directors; Marilyn Simmons, Member of the Board of
Directors; Sandy Aguire Mayer, Member of the Board of
Directors; John A. Rios, Member of the Board of Directors;
Darwin Curls, Member of the Board of Directors; Patricia
Kurtz, Member of the Board of Directors; Edward J. Newsome,
Member of the Board of Directors; Dr. Julia H. Hill, Member
of the Board of Directors; John W. Still, Member of the
Board of Directors, Defendants.
 No. 96-3870.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 14, 1997.
Decided Oct. 14, 1997.
 
 Arthur A. Benson II, Kansas City, MO, argued (John E. Kirklin and Jamie K. Lansford, on the brief), for Plaintiffs-Appellants.
 Bart A. Matanic, Jefferson City, MO (John R. Munich, Michael J. Fields and Jeremiah W. Nixon, on the brief), for Defendants-Appellees.
 Before RICHARD S. ARNOLD, Chief Judge, HEANEY, McMILLIAN, GIBSON, FAGG, BOWMAN, WOLLMAN, BEAM, LOKEN, HENSEN, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges, En Banc.
 ORDER
 On its own motion, the Court en banc hereby vacates the order previously entered granting in part the State of Missouri's suggestion for rehearing en banc. The en banc setting of an oral argument for Wednesday, October 22, 1997, is also vacated.
 
 
 1
 This action is taken by the Court en banc in anticipation of the filing of a revised panel opinion, which opinion will be filed immediately after the entry of this order. The case is hereby remanded to the panel for that purpose.
 
 
 2
 Either side is free to file a petition for rehearing, with or without suggestion for rehearing en banc, directed to the revised panel opinion.
 
 
 3
 Judge Bowman, Judge Wollman, Judge Beam, Judge Loken, and Judge Morris Sheppard Arnold dissent.
 
 
 4
 All members of the Court reserve the right to file opinions explaining their votes in this matter.
 
 
 5
 Before McMILLIAN, HEANEY, and JOHN R. GIBSON, Circuit Judges.
 
 
 6
 JOHN R. GIBSON, Circuit Judge.
 
 
 7
 The plaintiffs in the Kansas City school desegregation case appeal the district court's order denying them an award of attorneys' fees for their participation in the proceedings in the Supreme Court that culminated in Missouri v. Jenkins, 515 U.S. 70, 115 S.Ct. 2038, 132 L.Ed.2d 63 (1995) (Jenkins III ). The district court denied fees on the theory that, since the Supreme Court decided Jenkins III against the Jenkins class, the Jenkins class could not be considered the "prevailing party" within the meaning of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C.A. § 1988 (West Supp.1997).[1] We reverse and award fees.
 
 
 8
 The Jenkins class filed its application for attorneys' fees for the work in defending the State's certiorari petition, which resulted in the Supreme Court's decision in Jenkins III. The State's response was a legal one, that the State fully prevailed in the Supreme Court, reversing the decisions of this court over the opposition of the Jenkins class that the interdistrict goals of suburban comparability and desegregative attractiveness were beyond the scope of the intradistrict case, that the compensatory remedial program should be limited to victims of segregation, and that student achievement was not to be considered in the unitary status analysis. It asserts that it received all that it asked for, over the opposition of the Jenkins class. Therefore, the Jenkins class was not a prevailing party at the Supreme Court stage in the litigation, and could not be compensated for its fees. The State concluded by arguing that there was no exception to this rule in desegregation cases.
 
 
 9
 The district court found that plaintiffs had not achieved partial success in the certiorari proceedings. The district court stated: "Plaintiffs cannot be said to be 'prevailing parties' in the action before the Supreme Court." It rejected the Jenkins class's argument that even if it did not achieve success on appeal, it was entitled to retain the status of prevailing party from the underlying litigation.
 
 I.
 
 10
 The State argues generally that the standard of review in claims for attorneys' fees is abuse of discretion, citing Friends of the Boundary Waters Wilderness v. Thomas, 53 F.3d 881, 884 (8th Cir.1995). In Friends, an Equal Access to Justice Act case, we stated that broad rule, id. at 884, but continued by stating that in applying the standard, we review the district court's conclusions of law de novo and reject findings of fact only if they are clearly erroneous. Id. at 885. In Friends, there was no issue as to whether the plaintiffs were prevailing parties, but the question in issue under the EAJA was whether the government's position was substantially justified. The State also cites Johnson v. Bismarck Public School District, 949 F.2d 1000 (8th Cir.1991), in which we stated the rule that attorneys' fee award decisions are reviewed on an abuse of discretion standard. Id. at 1003. It is evident, however, that Johnson passed beyond the prevailing party issue and based its decision on the fee reduction on the ground of limited success, an area particularly appropriate for discretionary determination by the district court.
 
 
 11
 We have, however, on numerous occasions clearly stated that we review de novo the legal question of whether a litigant is a prevailing party. See Pottgen v. Missouri State High Sch. Activities Ass'n, 103 F.3d 720, 723 (8th Cir.1997); St. Louis Fire Fighters Ass'n v. St. Louis, 96 F.3d 323, 330 (8th Cir.1996). Accord Church of Scientology v. City of Clearwater, 2 F.3d 1509, 1512-13 (11th Cir.1993) ("We review the factual findings underlying a district court's determination regarding 'prevailing party' status for clear error.... Whether the facts as found suffice to render the plaintiff a 'prevailing party' is a legal question reviewed de novo."), cert. denied, 513 U.S. 807, 115 S.Ct. 54, 130 L.Ed.2d 13 (1994). In Association for Retarded Citizens v. Schafer, 83 F.3d 1008 (8th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 482, 136 L.Ed.2d 376 (1996), we stated that we reviewed fee awards for an abuse of discretion, "or an error in implementing the governing legal standards." Id. at 1010 (quotation omitted). The Supreme Court has defined and applied the test for prevailing party status in unmistakably legal terms: "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). Thus, while abuse of discretion governs in reviewing fee awards, the question of prevailing party status, a statutory term, presents a legal issue for decision, which we review de novo.
 
 
 12
 The district court's decision is based solely on the State's legal argument that the Jenkins class was not a prevailing party. It did not go beyond this threshold issue to areas requiring the exercise of discretion. The State made no argument that any fees awarded should be reduced because of limited success. The State's argument was an all-or-nothing one, that the Jenkins class was not a prevailing party and not entitled to recover any fees at all. Thus, we analyze the prevailing party issue de novo.
 
 II.
 
 13
 The Jenkins class argues that its status as "prevailing party" was established when it was determined that the State had violated the Constitution and was obliged to remedy the unconstitutional conditions it had created. Thereafter, the class representatives were obliged to defend the remedy and entitled to fees for doing so. They argue that the purpose of section 1988 requires that they be compensated for efforts necessary to defend the remedy, without constant reevaluation of their entitlement to fees, depending on whether they win every controversy that arises.
 
 
 14
 It is generally true that status as a prevailing party is determined on the outcome of the case as a whole, rather than by piecemeal assessment of how a party fares on each motion along the way. "Any given civil action can have numerous phases. While the parties' postures on individual matters may be more or less justified, the [Equal Access to Justice Act]--like other fee-shifting statutes--favors treating a case as an inclusive whole, rather than as atomized line items." Commissioner, INS v. Jean, 496 U.S. 154, 161-62, 110 S.Ct. 2316, 2320, 110 L.Ed.2d 134 (1990) (citing section 1988 case, among others). This is true of matters decided after judgment on the merits, as well as those decided before. See id.
 
 
 15
 Naturally, reversal on appeal of the merits can change a prevailing party into a non-prevailing party, and require that earlier fee awards be vacated. See Pottgen, 103 F.3d at 724; Pedigo v. P.A.M. Transp., Inc., 98 F.3d 396, 398 (8th Cir.1996). Jenkins III did not affect in any way the holding that the State had committed constitutional violations or that it was obliged to remedy those violations. In fact, Jenkins III only reversed orders providing quality education programs for the year 1992-93, 515 U.S. at 80, 115 S.Ct. at 2045, and salary increases ordered in 1992 and 1993, id.. These orders represent a small fraction of the relief that has been ordered in this case. The State can hardly dispute the substantiality of the remedy ordered by the district court and sustained in numerous appeals, since the State described the remedy as "massive," "unprecedented," and "astounding" in its brief before the Supreme Court.
 
 
 16
 Even though the actual holding of Jenkins III is limited to reversing the orders before it, the State argues that Jenkins III has ramifications that must affect the case as a whole, either resulting in a finding of unitariness or at least circumscribing the scope of the entire remedy.[2] Regardless of the effect of Jenkins III on the future progress of this case, it does not retroactively take away the Jenkins class's status as prevailing party in the underlying case. In Balark v. City of Chicago, 81 F.3d 658 (7th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 507, 136 L.Ed.2d 398 (1996), the Seventh Circuit rejected an argument that plaintiffs who enjoyed a consent decree for ten years were deprived of prevailing party status when their decree was dissolved under Fed. Rule Civ. P. 60(b). Balark queried:
 
 
 17
 How can one say that the plaintiffs did not prevail when their decree governed the parties' behavior for ten years, and the termination is prospective only? The only possible perspective from which the entitlement to fees can be considered is at the time the final judgment determining who prevails is entered (taking into account any appeals ...).
 
 
 18
 Id. at 665. Like the Balark plaintiffs, the Jenkins class has enjoyed the benefits of prevailing in this litigation for more than a decade. Jenkins III did not void the many remedial orders issued in this case that have never been reversed "during the process of a direct appeal." Balark, 81 F.3d at 663.
 
 
 19
 Moreover, though the State certainly obtained significant changes in the theories that would govern this action, it exaggerates when it contends that the effect of Jenkins III was to cut off relief to the Jenkins class peremptorily. The Supreme Court remanded for purposes of considering the partial unitary status issue under the principles of Freeman v. Pitts, 503 U.S. 467, 112 S.Ct. 1430, 118 L.Ed.2d 108 (1992). See Jenkins III, 515 U.S. at 101-03, 115 S.Ct. at 2055-56. The Supreme Court disapproved of the district court's use of desegregative attractiveness and suburban comparability as goals in this intradistrict case. Id. at 98-99, 115 S.Ct. at 2054. Justice O'Connor, in casting the fifth and deciding vote, observed that the Court properly refrained from addressing "the propriety of all the remedies that the District Court has ordered, revised, and extended in the 18-year history of this case." Id. at 113, 115 S.Ct. at 2061. While these remedies may be improper to the extent that they serve the goals of desegregative attractiveness and suburban comparability, she added: "[C]onversely, the District Court may be able to justify some remedies without reliance on these goals." Id. The Supreme Court also cautioned against use of achievement disparities in determining whether vestiges of segregation remained without attention to the proportion of such disparities caused by the constitutional violation. Id. at 101, 115 S.Ct. at 2055.
 
 
 20
 After remand, the Jenkins class continued to litigate various aspects of the remedial orders. Some three of these orders were before us in Jenkins v. Missouri, 103 F.3d 731 (8th Cir.1997) (Jenkins XIII ). We affirmed the remedy plan and budget for the 1996-97 school year, but only three limited issues were before us.[3] We discussed in some detail the impact of Jenkins III on the litigation as it remained before the district court. Id. at 736-38. Of greatest significance was the stipulation in which the State agreed to, and the district court approved, a State payment of $74.2 million to fund the budget for that year.[4] Id. at 737-38.
 
 
 21
 Nearly ten months after Jenkins III, on April 26, 1996, the State filed a motion for declaration of unitary status. Shortly thereafter, the State and the KCMSD entered into an agreement in which the State's responsibility would be phased out over a three-year period in return for a payment of $314 million dollars (later increased to $320 million). The district court denied the State's motion for unitary status with the exception of the Green[5] factor of extracurricular activities, and approved the terms of the settlement agreement. The State appealed the district court's denial of unitary status, and the Jenkins class appealed the district court's approval of the settlement. We affirmed the orders of the district court in Jenkins v. Missouri, 122 F.3d 588 (8th Cir.1997) (Jenkins XIV ). On the all-encompassing issue of unitariness, the Jenkins class undoubtedly prevailed. Had the State won all in the Supreme Court, as it contends, there would have been no legal justification for any further payments. Yet, in the months following Jenkins III, the State undertook new obligations to pay first $74.2 million and then $320 million to satisfy its liability to KCMSD. The State did so only because of its continuing exposure to fund the desegregation remedies, which was confirmed by the district court's denial of its unitary motion status, which we in turn affirmed. This eloquently points to the Jenkins class's continuing status as a prevailing party in this litigation after Jenkins III. The award of $320 million would have made the Jenkins class a prevailing plaintiff, even if it had obtained no other relief in the case. See Farrar, 506 U.S. at 111, 113 S.Ct. at 572-73. Therefore, we conclude as a matter of law that the Jenkins class is still the prevailing party in this litigation.
 
 III.
 
 22
 Jean stated that status as the "prevailing party" is only the beginning of the fees inquiry, since the "prevailing party" requirement is "a generous formulation that brings the plaintiff only across the statutory threshold." Jean, 496 U.S. at 160-61, 110 S.Ct. at 2320 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)); see Joseph A. v. New Mexico Dep't of Human Serv., 28 F.3d 1056, 1060 (10th Cir.1994). Once over that threshold, important questions still remain about whether fees should be awarded for matters on which the plaintiff lost. See Foster v. Board of Sch. Comm'rs, 810 F.2d 1021, 1024 (11th Cir.) (per curiam), cert. denied, 484 U.S. 829, 108 S.Ct. 99, 98 L.Ed.2d 60 (1987).
 
 
 23
 We have observed that a district court's discretion to deny attorneys' fees to a prevailing plaintiff is narrow. Prevailing plaintiffs should ordinarily recover fees unless special circumstances would make such an award unjust. See New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 68, 100 S.Ct. 2024, 2033, 64 L.Ed.2d 723 (1980); St. Louis Fire Fighters Ass'n, 96 F.3d at 331; Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1, 17 F.3d 260, 262-63 (8th Cir.1994); Hatfield v. Hayes, 877 F.2d 717, 719 (8th Cir.1989).
 
 
 24
 Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), gives the paradigm for determining whether fees are compensable under section 1988 in cases in which the plaintiff has prevailed on some, but not all, of his claims. If any issues on which the plaintiff lost are unrelated to those on which he won, the unrelated issues must be treated as if they were separate cases and no fees can be awarded. See id. at 434-35, 103 S.Ct. at 1939-40. If, however, the claims on which the plaintiff lost are related to those on which he won, the court may award a reasonable fee. See id. The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole. See id. at 436, 103 S.Ct. at 1941; Farrar v. Hobby, 506 U.S. at 114, 113 S.Ct. at 574-75. If the plaintiff has won excellent results, he is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which he did not win. See Hensley, 461 U.S. at 435, 103 S.Ct. at 1940. If the plaintiff's success is limited, he is entitled only to an amount of fees that is reasonable in relation to the results obtained. See id. at 440, 103 S.Ct. at 1943. Finally, of course, any fees must be "reasonably expended," so that services that were redundant, inefficient, or simply unnecessary are not compensable. See id. at 434, 103 S.Ct. at 1939-40.
 
 
 25
 Hensley itself did not address the treatment of fees incurred after judgment on the merits, but we nevertheless apply its principles in such cases. See Schafer, 83 F.3d at 1010-12. However, it is more complicated to assess the relations of each part of the litigation to the whole in cases that proceed over an indefinite time than in a simple action that comes to judgment and ends. Reimbursement for post-judgment litigation fees can be as important as reimbursement for pre-judgment fees in accomplishing the purpose of section 1988. In suits for long-term injunctive relief, such as institutional reform cases and school desegregation cases, the remedy can unfold in phases over many years.
 
 
 26
 A plaintiff's attorney may engage in several kinds of post-judgment activity. Some types of post-judgment activities are readily seen to be necessary adjuncts to the initial litigation, whereas other types of activities are more like a new, separate lawsuit and require a fee determination independent of the underlying case. Thus, monitoring the defendant's compliance with court orders and enforcing the remedy are generally compensable as part of the underlying case. See Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 559, 106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1986) (various monitoring and enforcement activities, including work before administrative agencies that could have adversely affected rights under consent decree); Schafer, 83 F.3d at 1010-11; Duran v. Carruthers, 885 F.2d 1492 (10th Cir.1989) (monitoring).
 
 
 27
 We have also stressed the importance of allowing the plaintiff in such cases fees for successfully defending the remedy against attacks. In Jenkins v. Missouri, 967 F.2d 1248 (8th Cir.1992)(Jenkins Fees IV ), we said:
 
 
 28
 [G]iven the special nature of desegregation cases, withholding from the plaintiffs the means for paying their attorneys could be devastating to the national policy of enforcing civil rights laws through the use of private attorneys general. School desegregation cases can continue for years and affect nearly everyone in the community in one way or another. Various interventions and collateral attacks are not only predictable, but inevitable in litigation affecting so many people in so many different capacities. Furthermore, a school desegregation case differs from much other litigation in that the main action does not result in a monetary recovery that might enable plaintiffs to finance a defense against collateral attacks on their judgments. The only monetary award received by the plaintiffs in a desegregation case is simply payment of their attorneys' fees, and it is inequitable to require the attorney for the class to defend against collateral attacks on the award. Such service is just as much a part of the representation of the plaintiff class as obtaining relief in the first instance. To deny plaintiffs fees in a desegregation case would be to deny them the means to respond to attacks on the remedy.
 
 
 29
 Id. at 1251.
 
 
 30
 Where, however, the plaintiff asks for remedial measures that are ultimately denied, he cannot be said to be "defending" the remedy, because the thing he sought has been declared not to be part of the remedy. Assuming the plaintiff can still be characterized as the prevailing party in the case as a whole, the question arises whether he is entitled to fees despite his failure on the particular matter, and if so, whether the fees should be reduced to reflect his lack of success. Under Hensley the first inquiry is whether the issues in the post-judgment litigation are inextricably intertwined with those on which the plaintiff prevailed in the underlying suit or whether they are distinct. The Fourth Circuit has applied this distinction to deny fees in civil rights cases where the parties entered a consent decree and further litigation concerned contractual issues under the consent decree, not the underlying civil rights claim. See Willie M. v. Hunt, 732 F.2d 383, 386 (4th Cir.1984). In Arvinger v. Mayor and City Council of Baltimore, 31 F.3d 196 (4th Cir.1994), the Fourth Circuit summarized its cases on this issue:
 
 
 31
 Thus, when subsequent litigation seeks to enforce or interpret a settlement agreement or consent decree, involving facts and principles different from those considered in the underlying litigation, the second is not considered "inextricably intermingled" with the first. On the other hand, a subsequent litigation initiated against the successful party to modify or "replay" the issues of the first litigation may be so intermingled. Plyler [v. Evatt, 902 F.2d 273 (4th Cir.1990) ] applies to carry forward prevailing party status only in this latter circumstance, and only that when the plaintiffs are forced to litigate to preserve the relief originally obtained.
 
 
 32
 Id. at 202. We applied this distinction in Schafer, where we held that the plaintiffs' post-judgment activities were so much greater than would have been necessary for monitoring the decree that they amounted to the assertion of distinct, new claims for relief, which could not be compensated on the strength of the plaintiffs' prevailing party status in the underlying suit. 83 F.3d at 1011.
 
 
 33
 If, on the other hand, the plaintiff's claim in the post-judgment litigation is inextricably intertwined with the underlying claims, then we must determine what fee award, if any, would be reasonable. Assessing the reasonableness of a fee requires us to consider the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity.
 
 
 34
 The most critical factor in the fixing of a reasonable fee is the overall success obtained. See Farrar, 506 U.S. at 114, 113 S.Ct. at 574-75. We must therefore determine the relationship the post-judgment litigation bears to the case as a whole, rather than assessing the plaintiff's success on the particular question in isolation. See Plyler v. Evatt, 902 F.2d 273, 281 (4th Cir.1990). The outcome of disputes about the scope of the remedy can greatly reduce the magnitude of relief obtained in the case as a whole; changes in the scope of the remedy may not change a prevailing party into a non-prevailing party, but they certainly can change the overall significance of the plaintiff's victory.
 
 
 35
 Even if the issue on which the plaintiff lost is minor in the context of a substantial victory, to be compensable, post-judgment work must be "useful and of a type ordinarily necessary," Delaware Valley, 478 U.S. at 561, 106 S.Ct. at 3096 (quotation marks omitted), to secure the result obtained in the underlying litigation. See Schafer, 83 F.3d at 1012. The courts have not interpreted this requirement tautologically, to mean that any unsuccessful efforts were perforce unnecessary, but rather have asked whether the plaintiff's attorneys would have been expected or obliged to take the position they took. See Plyler, 902 F.2d at 281 (awarding fees to counsel who were under clear obligation to defend remedy, though they lost on issue in question). For instance, in People Who Care v. Rockford Board of Education, 90 F.3d 1307, 1314 (7th Cir.1996), the Seventh Circuit reversed the district court's denial of fees for a certain appeal. The district court had refused to award fees because the appeal had been dismissed. The Seventh Circuit stated:
 
 
 36
 A court's focus should not be limited to the success/failure of each of the attorney's actions. Rather, it should be upon whether those actions were reasonable. In other words, the court should not look to whether F & H "won" the 1990 appeal, but should instead look to whether the fees F & H requests for that appeal were reasonably incurred.
 
 
 37
 Id. The Fourth Circuit stated that the court should consider whether the position the fee applicant unsuccessfully advocated was "essential to the preservation of the integrity of the consent decree as a whole." Plyler, 902 F.2d at 281.
 
 
 38
 Nevertheless, success or failure on the particular matter in question (as opposed to overall success) is still a factor in deciding the reasonableness of the attorney's efforts. See Schafer, 83 F.3d at 1012; Ustrak v. Fairman, 851 F.2d 983, 990 (7th Cir.1988) ("Since the reasonableness of a fee is a function in part of the success achieved by the expenditure, lack of success ... is certainly material in deciding how large the reimbursement should be."); Stewart v. Gates, 987 F.2d 1450, 1454 (9th Cir.1993) (plaintiffs not entitled to fee award for unsuccessful defense of section 1988 fee award on appeal).
 
 
 39
 Making success on the particular matter relevant but not determinative to the reasonableness of the fee fits well with our observations in Jenkins Fees IV, 967 F.2d at 1251, about the importance of providing post-judgment fees to assure enforcement of civil rights awards. If the plaintiffs' attorneys in extended civil rights cases must succeed on every matter they litigate, they are likely to be less vigorous in their representation of the class. The Ninth Circuit rejected an argument that section 1988 only permits fees for phases of the litigation in which the plaintiff won:
 
 
 40
 Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning. The County would have us scalpel out attorney's fees for every set-back, no matter how temporary, regardless of its relationship to the ultimate disposition of the case. This makes little sense.
 
 
 41
 Cabrales v. County of Los Angeles, 935 F.2d 1050, 1053 (9th Cir.1991) (Kozinski, J.). Awarding fees that were reasonably incurred, though perhaps they did not lead to a success in court, is more likely to result in responsible management of the remedial phase of desegregation suits.
 
 
 42
 Another factor that has been considered in deciding whether post-judgment fees were necessary and useful is whether the attorneys' activity was defensive, seeking to preserve relief obtained earlier, or offensive, seeking to augment what had already been approved. In Ustrak v. Fairman, the Seventh Circuit distinguished between a case in which the fee applicant unsuccessfully defends an appeal of relief he has won below and a case in which the fee applicant unsuccessfully appeals, seeking to expand his victory. 851 F.2d at 990. The Seventh Circuit concluded that it would be more likely to award fees in the former case than in the latter. We have referred to this case with approval in Schafer, 83 F.3d at 1012, and denied a fee where the prevailing party was seeking a greater victory, rather than defending the remedy.
 
 IV.
 
 43
 Applying Hensley to this case therefore requires us to decide first if the issues litigated were related to those on which the class prevailed. Two kinds of orders were at issue in Jenkins III, the orders instituting salary increases, see 515 U.S. at 80, 115 S.Ct. at 2045, and the order requiring the State to continue funding quality education programs despite the State's contention that the KCMSD had achieved partial unitary status with respect to those programs. See id. Both matters had been decided in the class's favor in the district court and in this court, and the class was defending the orders against the State's petition for certiorari.
 
 
 44
 The State's certiorari petition raised issues that were integrally related to the underlying case. The Supreme Court summed up the nature of the State's arguments: "In short, the State has challenged the scope of the District Court's remedial authority." Id. at 86, 115 S.Ct. at 2048. Although we have pointed out that the actual holding of Jenkins III only affected a very limited portion of the relief that has been ordered in this case since its inception, the scope of the arguments in Jenkins III was not so limited. The State mounted a challenge to remedial theories that were fundamental to the district court's remedial approach. We therefore conclude that the fees in question were closely related to the theories on which the Jenkins Class prevailed and that the Jenkins Class should therefore be awarded a reasonable fee.
 
 
 45
 In this circuit, we ourselves have awarded fees for appellate work, without the necessity of remanding for the district court to award the fees in the first instance. See Reel v. Arkansas Dep't of Correction, 672 F.2d 693, 699 (8th Cir.1982); Campbell v. Cauthron, 623 F.2d 503, 509 (8th Cir.1980); Finney v. Hutto, 548 F.2d 740, 743 (8th Cir.1977), aff'd, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).[6]
 
 
 46
 Following the issuance of the panel opinion in this case, the Jenkins Class filed a fee application with this court and the State filed objections. We sustain a number of the specific objections and reduce the amount requested accordingly.[7]
 
 
 47
 As we have observed, Hensley teaches that limited success on the merits is a factor in considering the reasonableness of the fee in relation to the results obtained.
 
 
 48
 See 461 U.S. at 440, 103 S.Ct. at 1943. We have discussed in detail above the holding of the Supreme Court, and the extent to which it affected the position of each of the parties. Certainly, the State prevailed on the several discrete issues, as we have said. The overall status of the Jenkins class as a prevailing party has not been altered. The class survived to litigate further and to prevail further, as we have outlined above. In deciding what allowance should be made to take into effect the limited success in the Supreme Court, we think an award to counsel for the Jenkins class in the amount of fifty percent requested is appropriate.
 
 
 49
 Accordingly, we award fees in the following amounts:
 
 
 50
 Work in the Supreme Court: Arthur Benson & Associates $76,154; James S. Liebman $11,150; Theodore M. Shaw $24,587.
 
 
 51
 For expenses: Arthur Benson & Associates $8,847.53; Mr. Shaw $1,674.88.
 
 
 52
 For district court work on the Supreme Court fees: Mr. Kirklin $8,712. For work on the appeal in this court on fees, Mr. Kirklin $7,711.50, Arthur Benson & Associates $3,744.25. Expenses: Arthur Benson & Associates $495.92.
 
 
 
 [1]
 42 U.S.C.A. § 1988(b) provides:
 In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs .... (footnote omitted).
 
 
 [2]
 After briefing in this appeal was complete, the district court determined that the KCMSD had attained unitariness in only one of the five aspects enumerated in Green v. County School Board, 391 U.S. 430, 435, 88 S.Ct. 1689, 1692-93, 20 L.Ed.2d 716 (1968). Jenkins v. Missouri, 959 F.Supp. 1151, 1165-68 (W.D.Mo.1997). We affirmed the district court's order. Jenkins v. Missouri, 122 F.3d 588 (8th Cir.1997) (Jenkins XIV )
 
 
 [3]
 The issues were reinstatement of the extended-day program, specific budget cuts for seven schools, and permanent substitutes in the foreign language magnets
 
 
 [4]
 The parties entered into this stipulation at the commencement of the hearing June 6, 1996, to consider the budget for the years 1997-2001. The parties also agreed that no evidence would be presented on whether vestiges of discrimination remained in the KCMSD. The settlement agreement between KCMSD and the State to discharge the State's remaining liability for a payment of $320 million recited that such payment for the 1996-97 year would be credited against the $320 million settlement figure. There was a hearing on the settlement in January 1997, and the order of the district court approving the settlement was entered March 25, 1997. Before final approval of the settlement and affirmance of the district court order by this court on August 12, 1997, the State had agreed to expend $74.2 million to fund the 1996-97 budget of KCMSD with only the protection of the credit called for in the settlement agreement, which was subject to this later approval by the court
 
 
 [5]
 Green v. County Sch. Bd., 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968)
 
 
 [6]
 The issue of whether the Court of Appeals may award fees in the first instance, though settled in this circuit, is the subject of a split of authority elsewhere. Compare Yaron v. Township of Northampton, 963 F.2d 33, 36 (3d Cir.1992), and Ustrak, 851 F.2d at 990 (fees awarded in Court of Appeals), with Smith v. Detroit Bd. of Educ., 728 F.2d 359, 360 (6th Cir.1984) (per curiam) (district court more appropriate forum to award fees incurred in appeal), and Souza v. Southworth, 564 F.2d 609, 613-14 (1st Cir.1977), and Ninth Circuit Rule 39-1.6-1.8. See generally Attorneys' Fees-Civil Rights-Fees on Appeal, 8 No. 4 Fed. Litig. 113 (1993)
 
 
 [7]
 We believe a reduction of 12 hours of Mr. Benson's time is required. With respect to Attorney Moritz's time, a reduction of 4.5 hours, and law clerks, 5 hours, is in our estimation reasonable. We are concerned about Mr. Shaw's failure to give a more specific day by day itemization of his time, and that at least part of his time was spent in discussing who should argue the case. A reduction of 20 hours is appropriate. We reduce Mr. Kirklin's hours by 2