# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-4188

_____

Sharon Yarbrough; Beatrice Molin;   *
Community Stabilization Project;   *
Family Housing Fund,   *
  *
  Appellants,   *
  *   Appeal from the United States
  v.   *   District Court for the
  *   District of Minnesota.
Andrew M. Cuomo, in his official   *
capacity as Secretary of the   *
Department of Housing and Urban   *
Development; United States   *
Department of Housing and Urban   *
Development; Cathedral Hills   *
Apartments, LLC; LEECO Co.,   *
  *
  Appellees.   *

_____

Submitted: November 19, 1999
Filed: April 5, 2000

_____

Before WOLLMAN, Chief Judge, and LAY and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Plaintiffs-appellants, two nonprofit organizations and two residents of the Selby-Dayton Apartments in St. Paul, Minnesota, appeal the district court's[1] denial of their application to recover fees and disbursements under the Equal Access to Justice Act ("EAJA") from defendants-appellees, the Department of Housing and Urban Development ("HUD") and its Secretary.[2] We affirm.

I.

The Selby-Dayton Apartments ("Selby-Dayton"), a ninety-three-unit multifamily housing project, was rehabilitated in 1974-1975. The owner, LEECO Co. ("LEECO"), financed the project with a mortgage insured by HUD's Federal Housing Administration. The mortgage rider and the regulatory agreement between LEECO and HUD provided that the property could not be conveyed or transferred without HUD's prior approval, and that the mortgage could not be prepaid during the first twenty years without HUD's prior approval. In 1996, HUD became the holder of the mortgage when LEECO defaulted.

On October 6, 1997, LEECO entered into a purchase agreement with Cathedral Hill Apartments, LLC ("Cathedral Hill") to sell Selby-Dayton. Under the agreement, Cathedral Hill was to prepay the outstanding balance of the mortgage. Closing was to occur no later than February 27, 1998. Cathedral Hill contacted HUD to request approval of the sale. In December of 1997 and January of 1998, plaintiffs argued to HUD that the proposed sale could not be approved without violating a provision of the National Housing Act, 12 U.S.C. § 1701z-11(k)(2), as it did not ensure that affordable

---

[1]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

[2]Plaintiffs did not seek recovery from the two private entities identified as defendants in the case caption. See 28 U.S.C. § 2412(d)(1)(A) and (d)(2)(C) (allowing recovery in actions brought against United States agencies and officials).

rental housing would be provided through the original maturity date of the mortgage, or without violating a provision of the Low Income Housing Preservation and Resident Homeownership Act, 12 U.S.C. § 4113(c), as it did not guarantee that existing tenants could reside in their apartments for three years at current rent levels. On February 11, 1998, HUD denied Cathedral Hill's request for approval, citing section 1701z-11(k)(2). In telephone conversations in February and March, however, HUD informed plaintiffs that if a mortgage prepayment were tendered, it would have to accept it.

On March 15, 1998, the Saint Paul Housing and Redevelopment Authority ("HRA") and the Family Housing Fund ("FHF") proposed to HUD that they acquire and rehabilitate Selby-Dayton, assume the mortgage, and maintain the property as affordable housing for low-income residents. The proposal noted that the HRA had authorized the acquisition of Selby-Dayton and had submitted a purchase agreement to LEECO, conditioned upon LEECO's termination of its earlier purchase agreement with Cathedral Hill. The proposal also noted that the FHF had authorized the expenditure of $300,000 for repairs to Selby-Dayton, that the Minnesota Housing Finance Agency ("MHFA") had authorized the expenditure of $340,000 to be used for either capital improvements or to cure the mortgage default on Selby-Dayton, and that the FHF, the HRA, and the MHFA were prepared to authorize an additional $1,400,000 in expenditures for the rehabilitation of Selby-Dayton, and to pursue $2,300,000 in low-income and historic tax credits for the project.

Meanwhile, apart from the mortgage, HUD had been contracting with LEECO to subsidize the rent payments for the residents of most of the apartments under the Section 8 housing assistance program. On September 22, 1997, HUD notified LEECO that it was considering nonrenewal of the Section 8 contracts due to deficiencies in Selby-Dayton's physical condition. After inspecting the property on May 22, 1997, January 6, 1998, and March 6, 1998, and sending additional notices to LEECO, HUD concluded that the property was in unsatisfactory physical condition, and that LEECO had not taken adequate corrective actions despite being notified of the deficiencies.

3

Accordingly, HUD notified LEECO on March 10 that it was terminating the contracts, effective March 31. Plaintiffs urged HUD to pursue alternatives to terminating the Section 8 contracts.

Plaintiffs initiated this lawsuit on March 16, 1998, seeking a declaration that HUD's actions were in violation of law, an injunction preventing HUD from terminating the Section 8 contracts or accepting prepayment of the mortgage, an injunction preventing the sale of Selby-Dayton, and compensatory damages, costs, and fees. LEECO signed a purchase agreement the next day to sell Selby-Dayton to the HRA, and notified Cathedral Hill the following day that it was canceling the prior purchase agreement. On March 23, plaintiffs and HUD agreed to a stipulated order, approved by the district court on March 25, which provided that HUD would extend the Section 8 contracts through April 30, and that if prepayment of the mortgage were tendered on or before May 22, it would not be processed by HUD, but would instead be held by the court for thirty days. On March 25, the FHF agreed to fund repairs to Selby-Dayton, and in exchange, HUD agreed to renew the Section 8 contracts for April and May.

Plaintiffs then applied for $127,233.43 in fees and disbursements under the EAJA. The district court denied the request, concluding that plaintiffs were not prevailing parties, and alternatively, even if they were prevailing parties, HUD's position was substantially justified. Plaintiffs appeal.

II.

The EAJA directs courts to award fees and other expenses to prevailing parties unless the United States' position was substantially justified or special circumstances would make an award unjust. See 28 U.S.C. § 2412(d)(1)(A). We will reverse the district court's denial of fees under the EAJA only if the court abused its discretion. See Friends of Boundary Waters Wilderness v. Thomas, 53 F.3d 881, 884-85 (8th Cir.

4

1995). We review for clear error the court's factual findings underlying its determination of prevailing party status, but we consider de novo the legal question whether those facts suffice to render the plaintiff a prevailing party. See Jenkins v. Missouri, 127 F.3d 709, 713 (8th Cir. 1997).

Cases which result in a settlement or consent decree, such as the instant case, are governed by the principles set forth in Farrar v. Hobby, 506 U.S. 103 (1992). See Peter v. Jax, 187 F.3d 829, 833 (8th Cir. 1999), petition for cert. filed, No. 99-1428 (U.S. Feb. 28, 2000); Tyler v. Corner Constr. Corp., 167 F.3d 1202, 1205 (8th Cir. 1999).[3] A plaintiff is considered a prevailing party when he obtains "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff" at the time of the settlement. See Farrar, 506 U.S. at 111-12.

Critically, it must be the litigation–not some other process–that brings about the change in the defendant's behavior. See Peter, 187 F.3d at 834. In demonstrating causation, moreover, the plaintiff must show more than that he would not have obtained relief but for the filing of his lawsuit; he must show that his putative cause made remedial action more likely. See id. Because the existence of a causal link between the plaintiff bringing suit and the defendant changing his behavior is a factual issue, we review for clear error the district court's findings on the matter. See id.

Plaintiffs point to various factors which they believe make them prevailing parties. First, they contend that they could not have achieved their goals without litigation. As noted above, however, this "but for" assertion by itself is insufficient to

---

[3]Although Peter and Tyler both analyzed prevailing-party claims arising under 42 U.S.C. § 1988(b), the standards for analyzing such claims are generally applicable to all claims arising under prevailing-party fee-recovery statutes. See Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983). See also Jenkins, 127 F.3d at 712-13 (equating standards for reviewing § 1988(b) claims and EAJA claims).

5

show causation. Plaintiffs also note that they secured the stipulated order. Standing alone, however, that order does not automatically render them prevailing parties. See id. at 833. We therefore consider the specific provisions of the stipulated order in the context of the circumstances which preceded and followed it.

The dense chronology recounted above shows that several events were happening concurrently, complicating the inquiry into whether plaintiffs achieved their goals through litigation or through prelitigation and nonlitigation processes. HUD's approval of the sale of Selby-Dayton to Cathedral Hill was prevented, but this result was achieved prior to the filing of the lawsuit. Although Selby-Dayton was maintained as affordable housing for low-income residents, this result is largely attributable to the HRA and FHF's prelitigation proposal to acquire and rehabilitate Selby-Dayton, funded by the HRA, FHF, and MHFA's prelitigation marshaling of over $2,000,000 in authorized and to-be-authorized expenditures. HUD indeed renewed the Section 8 contracts after the lawsuit was filed, but did so in exchange for the FHF's agreement to fund repairs to Selby-Dayton, consistent with its prelitigation position that it was canceling the contracts due to the poor physical condition of the property and the owner's failure to take corrective action. On these facts, the district court's conclusion that plaintiffs' lawsuit did not materially alter the legal relationship between the parties by modifying HUD's behavior in a way that directly benefitted plaintiffs at the time of the settlement "is supported by the record and thus not clearly erroneous. . . . The chronology amply supports the district court's finding that it was . . . not the litigation that" achieved plaintiffs' goals. See id. at 834-35.

Regarding the Section 8 issue, plaintiffs argue in essence that these events were inextricably intertwined. They contend that without the stipulated order, the FHF would not have funded the repairs, because it had no guarantee that LEECO would not have then consummated the sale of Selby-Dayton. Consequentially, plaintiffs argue, HUD would not have renewed the Section 8 contracts. We reject this argument, however, because prior to the stipulated order, HUD had already denied Cathedral

6

Hill's request for approval of the sale, the closing date required by the purchase agreement had already passed, LEECO and the HRA had already signed the new purchase agreement for Selby-Dayton, and LEECO had already notified Cathedral Hill that it was canceling the prior purchase agreement. See id. at 835 (party does not prevail by securing injunction enjoining behavior that was not occurring at time of injunction or for which there was no imminent threat of occurrence). If anything should have assured the FHF that it could proceed, it should have been these presettlement events, not the stipulated order. The order was of little value in this regard because it did not completely enjoin the sale of Selby-Dayton or totally bar HUD from accepting prepayment of the mortgage, as plaintiffs had sought in their complaint; it merely froze any prepayment for thirty days to allow plaintiffs an opportunity to litigate its legality, which they could have done with or without the stipulated order. Again, on this record, we cannot say that the district court's findings are clearly erroneous.

## III.

We conclude that the district court did not abuse its discretion in denying plaintiffs' application for fees and disbursements because its factual findings are supported by the record, and its conclusion that those facts are insufficient to render plaintiffs prevailing parties is legally correct. We therefore need not consider whether HUD's position was substantially justified, or whether there were special circumstances that would make an award unjust. Accordingly, we affirm the judgment of the district court.

7

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.