# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1459

_____

| | | |
|---|---|---|
| Steven C. Emery; Rocky Le Compte; | * | |
| James Picotte, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Roger Hunt, in his official capacity | * | District of South Dakota |
| as Speaker of the South Dakota House | * | |
| of Representatives; House of | * | |
| Representatives, South Dakota; Carole | * | |
| Hillard, in her official capacity as | * | |
| President of the South Dakota Senate; | * | |
| Senate, South Dakota; Joyce | * | |
| Hazeltine, in her official capacity as | * | |
| Secretary of the State of South Dakota, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: October 18, 2001

Filed: December 6, 2001

_____

Before WOLLMAN, Chief Judge, FAGG and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Steven Emery, Rocky Le Compte, and James Picotte brought this lawsuit challenging the legality of a state legislative district in South Dakota. After ruling that the legislative district had been created in violation of the South Dakota Constitution, the district court ordered a special election and awarded attorney fees. On appeal, these three plaintiffs argue that the fee award was too small. Because the district court's fee award appears to have been based, in part, on an erroneous interpretation of federal law, we reverse in part and remand.

## I.    BACKGROUND

In 1991, following the 1990 census, the South Dakota Legislature drew new district lines for the state senate and house of representatives. It divided the state into thirty-five districts, with each district electing one senator and two members of the house of representatives. In thirty-four of the thirty-five districts, both house members were to be elected at large within the entire district. District 28, in contrast, was divided into two single-member house districts, House Districts 28A and 28B.

The legislature made this special provision for District 28, in its own words, "in order to protect minority voting rights." S.D. Codified Laws § 2-2-28 (Michie 1992). House District 28A included the Cheyenne River Sioux Reservation and portions of the Standing Rock Sioux Reservation. At the time of the 1990 census, approximately sixty percent of the voting-age population of House District 28A was American Indian. In House District 28B, which did not include any reservation land, less than four percent of the voting age population was American Indian. In District 28 as a whole, less than twenty-nine percent of the voting-age population was American Indian.

In 1996, the state legislature abolished House Districts 28A and 28B and required candidates for the two house seats to run in District 28 at large. S.D. Codified Laws § 2-2-28 (Supp. 2001). Several years later, on February 14, 2000, Emery, Le Compte, and Picotte filed this lawsuit challenging the legality of House

District 28. These individuals are all residents of the Cheyenne River Sioux Reservation. They sued both houses of the South Dakota Legislature, the leader of each house, and the South Dakota Secretary of State. Their complaint alleged that the state legislature's 1996 redistricting of House District 28 violated both the federal Voting Rights Act of 1965, 42 U.S.C. § 1971, et seq., and Article III, Section 5 of the Constitution of the State of South Dakota. Later, the United States intervened as a plaintiff, alleging only violations of the Voting Rights Act.

The district court ruled in favor of the individual plaintiffs on their state claim without reaching the federal claims. The state constitutional question presented by the individual plaintiffs' complaint was whether the 1996 redistricting violated Article III, Section 5 of the South Dakota Constitution, which provides for apportionment "in 1983 and in 1991, and every ten years after 1991."

On the defendants' motion, the district court certified this question to the South Dakota Supreme Court. The supreme court accepted certification and held that the legislature's 1996 redistricting violated the state constitution. In re Certification of a Question of Law (Emery v. Hunt), 615 N.W.2d 590 (S.D. 2000). On July 28, 2000, the district court informed the parties the federal claims presented by the individual plaintiffs and the United States were moot, and the only remaining issues were the remedy and attorney fees.

On August 10, 2000, the district court held that House Districts 28A and 28B were "the proper legislative districts as a matter of law." As a remedy, the district court voided the results of a previous primary election and ordered that a special primary election be held to choose candidates for the regularly scheduled general election in November. In choosing this remedy, the district court rejected the individual plaintiffs' proposal for a single, general election in which the candidates would be chosen directly by the political parties and by petition.

Emery, Le Compte, and Picotte subsequently filed a motion for costs and attorney fees, asking that out-of-state counsel be compensated at out-of-state rates. In all, they requested $194,678.75 in attorney fees and $11,270.69 in expenses.

The district court awarded $31,541.85 in attorney fees and $2,056.93 in expenses.  In reaching this award, the district court denied compensation for particular aspects of the case on which the individual plaintiffs did not prevail.  Thus, the district court refused any compensation for the time out-of-state counsel spent working on federal claims.  The district court also declined to award or awarded substantially reduced fees for time counsel spent opposing the defendants' motions to dismiss, researching the issue of class certification, and proposing a remedy for the state constitutional violation.  The district court calculated the compensation for out-of-state counsel based upon in-state rates, but enhanced the rate for lead out-of-state counsel under the factors listed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).  See Allen v. Amalgamated Transit Union Local 788, 554 F.2d 876, 884 (8th Cir. 1977).  Finally, the district court denied requests for reimbursement of certain postage expenses, time expert witnesses spent performing tasks which the plaintiffs claimed were paralegal, and time attorneys spent preparing itemized billing statements.

Emery, Le Compte, and Picotte[1] now appeal the district court's fee award, arguing that errors by the district court resulted in a fee award that is too small.

---

[1]  When discussing the fee issues raised on appeal, we refer to Emery, Le Compte, and Picotte as the plaintiffs.  Our use of the term "plaintiffs" in this context excludes the United States, which was a plaintiff below, but which has not appealed and whose claims were dismissed by the district court.

## II.   DISCUSSION

A district court's award of attorney fees is reviewed for abuse of discretion. Webner v. Titan Distrib., Inc., 267 F.3d 828, 838 (8th Cir. 2001).  A district court abuses its discretion if it commits an error of law.  Koon v. United States, 518 U.S. 81, 100 (1996).  Thus, even under the abuse of discretion standard, a district court's rulings on issues of law are reviewed de novo.  See Computrol, Inc. v. Newtrend, L.P., 203 F.3d 1064, 1070 (8th Cir. 2000).

Under section 14 of the Voting Rights Act, as amended in 1975, a prevailing plaintiff, other than the United States, may be awarded a reasonable attorney fee in "any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment."  42 U.S.C. § 1973*l*(e).  The plaintiffs sought an award of fees and costs under this section and under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988.  In providing for attorney fee awards in civil rights cases, Congress intended to "promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators."  Casey v. City of Cabool, 12 F.3d 799, 805 (8th Cir. 1993).  See also Ortiz v. Regan, 980 F.2d 138, 140 (2d Cir. 1992).

The defendants do not contest that the plaintiffs are entitled to an award of attorney fees under these federal statutes, even though the plaintiffs ultimately prevailed only on state constitutional claims.  See Kimbrough v. Arkansas Activities Ass'n, 574 F.2d 423, 426-27 (8th Cir. 1978).  The principal issue presented on appeal is whether the district court was correct in disallowing fees for counsel's work on the plaintiffs' unsuccessful federal claims.

The Supreme Court established the framework for awarding statutory attorney fees in Hensley v. Eckerhart, 461 U.S. 424, 426 (1983), specifically when "a partially prevailing plaintiff may recover an attorney's fee for legal services on unsuccessful claims."  Under Hensley, the ordinary starting point for a fee award is multiplying the

number of hours reasonably expended by a reasonable hourly rate. Id. at 433. When a plaintiff has prevailed on some claims but not on others, the plaintiff may be compensated for time spent on unsuccessful claims that were related to his successful claims, but not for time spent on unsuccessful claims that were "distinct in all respects from his successful claims." Id. at 440. Claims are related, and hence deserving of compensation, if they "involve a common core of facts" or are "based on related legal theories." Id. at 435. See also Jenkins v. Missouri, 127 F.3d 709, 716 (8th Cir. 1997) (en banc).

There were some legal and factual differences between the plaintiffs' state claim and their federal claims. Most obviously, the state constitutional claim involved the timing of the 1996 redistricting, while the federal claims involved the effect the 1996 redistricting had on the plaintiffs' constitutional right to vote. Compare S.D. Const. art. III, § 5 with 42 U.S.C. § 1973.

Such differences, however, are outweighed by the close relationship between the plaintiffs' state and federal claims. Each of the plaintiffs' claims involved a common core of operative facts – the creation of House Districts 28A and 28B in 1991 and the abolition of these districts by the legislature in 1996 – as well as a legal challenge to that legislative action. The ultimate goal of reestablishing House Districts 28A and 28B for the November 2000 election was the same for the state claim and the federal claims. The claims were so closely related that the plaintiffs' success on the state claim rendered their federal claims moot. These commonalities are sufficient to render the plaintiffs' unsuccessful federal claims "related" to the successful state law claim for purposes of an award of attorney fees.

Under Hensley, the fee award must be justified by the plaintiff's level of success. "[T]he most critical factor is the degree of success obtained." Hensley, 461 U.S. at 436. See also Jenkins, 127 F.3d at 718. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461

U.S. at 435. Under this result-oriented standard, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id. As the Supreme Court observed in Hensley, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." Id.

The federal claims on which the plaintiffs did not succeed were alternative grounds for the result the district court reached. All of the claims raised by the plaintiffs shared the common legal goal of reestablishing House Districts 28A and 28B in time for the November 2000 election. The plaintiffs fully achieved that goal by prevailing on their state constitutional claim.

According to the defendants, the plaintiffs failed in a sense because they might have achieved even greater success on their federal voting rights claims. Defendants suggest that a victory for the plaintiffs under the Voting Rights Act might have tied the South Dakota Legislature's hands in its future attempts to redraw the lines of District 28. In Hensley, the Supreme Court measured success in terms of "the overall relief" granted in the case at hand. See id. at 435. We decline to speculate about what the plaintiffs might have been able to do with a victory on their federal claims in a future case or in future legislative action. In terms of the relief sought and the relief granted in this case, the plaintiffs achieved as much on their state constitutional claim as they could have achieved on their federal voting rights claims. Because the plaintiffs obtained an excellent result in this case, they are entitled to reasonable compensation for the time their attorneys worked on their claims under the Voting Rights Act.

The Supreme Court's admonition in Hensley to evaluate success in light of the whole case applies not just to different claims, but also to counsel's work in different stages of the case. Generally speaking, "status as a prevailing party is determined on the outcome of the case as a whole, rather than by piecemeal assessment of how a

-7-

party fares on each motion along the way." Jenkins, 127 F.3d at 714. Thus, the court should not simply deny fees for particular matters on which the plaintiff did not prevail. Id. at 717. Any award for time spent on matters on which a plaintiff lost, however, must be reasonable, considering "the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity." Id. at 718.

In reaching its fee award, the district court appeared to carve out counsel's work on some aspects of the case as generally undeserving of compensation. The district court awarded only nominal fees for time counsel spent opposing the motions to dismiss and awarded no fees for time spent opposing the motion for certification to the South Dakota Supreme Court. It also denied any compensation for the time plaintiffs' counsel spent working on the remedial phase of the case, even though counsel's work on that phase was the direct result of the plaintiffs' success on the merits.[2] On remand, the district court should award a reasonable fee for the time counsel spent on these matters.

The district court did not err in basing the fee award on in-state rates. A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated. Avalon Cinema Corp. v. Thompson, 689 F.2d 137, 140 (8th Cir. 1982) (en banc). In a case where the plaintiff does not use local

---

[2] As we observed in Jenkins, "changes in the scope of the remedy may not change a prevailing party into a non-prevailing party, but they certainly can change the overall significance of the plaintiff's victory." Jenkins, 127 F.3d at 718. In this case, the plaintiffs failed to dissuade the district court from ordering a special primary election to determine which candidates would be on the ballot for the general election in November. We leave it to the district court to determine whether and to what extent the plaintiffs' failure on this issue changed the overall significance of their victory.

counsel, the court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case. Id. at 140-41. In this case, the district court declined to award a fee based on out-of-state rates because it found that the plaintiffs could have found qualified counsel inside South Dakota if they had looked. The district court, which is "intimately familiar" with its local bar, was in a better position to make this determination, and we see no abuse of discretion in its ruling on this issue. See Moore v. City of Des Moines, 766 F.2d 343, 345-46 (8th Cir. 1985).

We also affirm the district court's denial of reimbursement for certain costs, such as postage expenses and time counsel spent preparing itemized billing statements. The district court found that both of these categories of expenses, as they were described in counsel's fee request, were part of normal office overhead. Plaintiffs are not entitled to reimbursement for expenses that are part of normal office overhead in the community. See Sussman v. Patterson, 108 F.3d 1206, 1213 (10th Cir. 1997). In light of the district court's familiarity with the practice of law in South Dakota and the absence of any contrary evidence about billing practices in the community, we find no abuse of discretion on this issue.

Similarly, we affirm the district court's denial of reimbursement for claimed paralegal tasks performed by expert witnesses. The plaintiffs do not contend that expert witness fees are compensable under the Voting Rights Act; rather, they claim that these particular services were compensable paralegal work. In the past we have not resolved whether paralegal work is compensable when it is performed by expert witnesses. See Jenkins v. Missouri, 158 F.3d 980, 983-84 (8th Cir. 1998). We need not reach the issue in this case, either. The district court evidently believed that the plaintiffs were attempting to obtain compensation for expert witness expenses by merely relabeling expert work as paralegal work. The district court did not abuse its discretion in denying reimbursement for such expenses.

## III. CONCLUSION

The plaintiffs have also asked this Court to award attorney fees without remanding the case to the district court. Because the district court has a superior feel for the case and for the practices of the bar of South Dakota, we decline to do so. Instead, we reverse the fee award in part and remand the case to the district court for a reevaluation of the fee request consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.